**Michael B. TIEDEL, Plaintiff–Appellant,**

v.

**NORTHWESTERN MICHIGAN COLLEGE, a not-for-profit corporation, Defendant,**

**Beech Aircraft Corporation, a corporation, Defendant–Appellee.**

**No. 87–2159.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 17, 1988.
Decided Dec. 29, 1988.

A. Denison Weaver (argued), A. Denison Weaver, Ltd., Chicago, Ill., for appellant.

Richard G. Ward, Sullivan, Ward & Bone, Detroit, Mich., Michelle A. Thomas (argued), Southfield, Mich., for appellee.

Before MERRITT, MARTIN and MILBURN, Circuit Judges.

MILBURN, Circuit Judge.

In this diversity action plaintiff-appellant Michael Tiedel appeals from the final judgment awarding the defendant $47,753.01 in actual attorneys' fees and other litigation costs, pursuant to Local Rule 42(j) and (k) of the United States District Court for the Western District of Michigan. This appeal presents the question of whether a district court may enforce its pretrial mediation plan by taxing the losing party with the prevailing party's actual attorneys' fees pursuant solely to the authority of a local district rule. For the reasons set out below we hold it may not, and reverse.

I.

This product liability action arises from the crash of a private airplane on June 4, 1979. Plaintiff Tiedel was a student in a flying course at Northwestern Michigan College. As part of its flight program, the college owned various airplanes, including the Beech Sierra involved in this case. On the day of the crash, plaintiff Tiedel was flying with college instructor Michael Penrod. While Penrod was piloting the plane, he shut off the flow of gasoline to the engine to simulate an emergency. Gas flow to the engine was never reactivated, and the plane crashed. Penrod was killed and Tiedel suffered bodily injury.

Plaintiff filed this action on July 16, 1981, naming as defendants Northwestern Michigan College and Beech Aircraft Corporation. On December 30, 1981, plaintiff and the college entered into a consent judgment in favor of the plaintiff in the amount of $100,000.

On March 15, 1982, plaintiff filed an amended complaint naming Beech Aircraft

as the sole defendant. He asserted the plane was equipped with a defective fuel selector switch and defectively designed and manufactured seat belts and shoulder harnesses. The case proceeded through discovery until July 17, 1984, when the district court entered an order *sua sponte*, submitting the matter to mediation pursuant to Local Rule 42.[1] Plaintiff did not object, and a mediation hearing was held on March 8, 1985. At the conclusion of the hour-long hearing (local rules limit each side's presentation to thirty minutes), the panel rendered a unanimous evaluation of "no cause" of action in favor of the defendant. The evaluation was accepted by the defendant but rejected by the plaintiff, who continued to insist upon a jury trial.

Trial commenced on April 1, 1986. On April 23, 1986, the jury returned a verdict for the defendant. Judgment for the defendant was entered on April 28, 1986. On May 22, 1986, Beech Aircraft submitted a bill of $110,993.11, and requested it be taxed against the plaintiff pursuant to Federal Rule of Civil Procedure 54(d), 28 U.S.C. § 1920 and Local Rule 42. The bill included, among other things, deposition and travel expenses of $4,520.39; records and deposition fees of $903.24; expert witness fees of $26,076.90; trial exhibit costs of $5,205.16; and actual attorneys' fees of $35,439.70. On May 28, 1986, plaintiff filed a notice of appeal of the judgment with this court. That appeal was dismissed for want of prosecution on July 7, 1986.

The district court initially scheduled a hearing on the defendant's motion for costs on October 7, 1986. It was rescheduled for November 4, 1986, and held on that date, but in the absence of plaintiff's counsel, who failed to appear. Ten days later, plaintiff's counsel requested leave to file a response to defendant's motion which had been filed six months earlier. Plaintiff's counsel explained his failure to appear at the hearing by citing inadvertence and scheduling conflicts. The district court granted leave to respond despite defendant's objections.

The court conducted a rehearing on the matter on March 24, 1987, and granted the defendant's motion in full. Judgment was entered two days later in the amount of $110,993.11.

On April 4, 1987, plaintiff filed a motion to vacate or, in the alternative, to amend the judgment pursuant to Fed.R.Civ.P. 59(e). Plaintiff contended the court abused its discretion in ordering mediation under Local Rule 42 because the highly complex and technical nature of the case precluded effective presentation in a thirty-minute hearing. Plaintiff also contended that the local rule which permitted the taxing of an adverse party's actual costs was unconstitutional in that it penalized a litigant who failed to obtain a favorable judgment. Plaintiff further argued that the local rule was inconsistent with the Federal Rules of

---

1. Local Rule 42 provides in pertinent part:
   Rule 42. Mediation
   (a) Eligible Cases. The Court may submit to mediation any civil action, or part thereof, not involving claims of constitutional rights.
   (b) Manner of Selection of Cases. A case may be selected for mediation:
   (1) By stipulation of the parties with the approval of the Court;
   (2) On motion of a party with notice to opposing party;
   (3) On the Court's own motion with notice to any party.
   (c) Objection to Mediation Order on Court's Own Motion.
   (1) Objections must be made by motion for reconsideration within ten (10) days of the date of the Court's order.
   \* \* \* \* \* \*
   (j) Effect of Mediation.
   \* \* \* \* \* \*

   (3) If the mediation panel's evaluation is unanimous and the defendant accepts the evaluation but the plaintiff rejects it and the matter proceeds to trial, the plaintiff must obtain a verdict in an amount which, when interest on the amount and costs from the date of filing of the complaint to the date of the evaluation are added, is more than ten (10) percent greater than the evaluation in order to avoid the payment of actual costs to the defendant.
   \* \* \* \* \* \*
   (6) For good cause shown, the Court may order relief from payment of any or all costs as set out in subsections (j)(1) through (j)(5), above.
   (k) Actual Costs. Actual costs include those costs and fees taxable in any civil action and attorneys' fees for each day of trial as may be determined by the Court.

Civil Procedure and 28 U.S.C. § 1920, and therefore in violation of the court's rule making power under 28 U.S.C. § 2071.

Beech Aircraft countered that the plaintiff had failed to file a timely supporting brief for his motion and, in any case, the district court's pretrial mediation procedures were constitutional and proper. The defendant also argued that plaintiff's motion to alter or vacate the judgment was in a sense waived because it consisted of arguments that could have been presented in response to the court's order submitting the case to mediation, or at least to the defendant's original motion for costs. Indeed, at no time prior to the motion to vacate had plaintiff ever challenged the propriety of Local Rule 42, the order sending the case into mediation, or the actual amount of costs requested by the defendant, despite numerous opportunities to do so.

Nevertheless, the court conducted a hearing on plaintiff's motion on May 26, 1987. A few weeks later, the Supreme Court held in *Crawford Fitting Co. v. J.T. Gibbons*, 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987), that a prevailing party's ability to recover expert witness fees in federal litigation was limited to the statutory limit of $30.00 a day. Plaintiff then contended that the expert witness fees sought by the defendant were excessive under *Crawford Fitting Co.*

On October 8, 1987, the court conducted a supplemental hearing on plaintiff's motion. Thereafter, on October 30, 1987, the court granted plaintiff's motion in part, striking the award of expert witness fees in excess of $30.00 per day, but affirming its award of costs and attorneys' fees to the defendant in the amount of $47,753.01. The court held that Local Rule 42 constituted a valid exercise of its inherent power to conduct its business in an economical and efficient manner, and the imposition of attorneys' fees was a means of encouraging parties to give serious consideration to mediation. It further found Local Rule 42 to be constitutional and consistent with the federal rules and statutes and Michigan

law, 118 F.R.D. 54. Tiedel filed a notice of appeal on November 24, 1987.

## II.

### A.

The Supreme Court and all courts established by Congress have the power to prescribe rules for conducting their business. These rules must be "consistent with Acts of Congress and rules of practice and procedure prescribed by the Supreme Court." 28 U.S.C. § 2071. Additionally, Fed.R.Civ. P. 83 empowers district courts to make and amend rules governing their practice, as long as the local rules are consistent with the federal scheme.

The draftsmen of Rule 83 expected local rule making "would be used only on rare occasions when the civil rules deliberately had left gaps to be filled in the light of recognized local needs[,] [such as the setting of motion days]." 12 C. Wright & A. Miller, *Federal Practice & Procedure: Civil 2d* § 3152 (1979 and Supp.). Rule 83 was amended in 1985 in response to the urgings of many commentators that local rules were clogging the federal scheme and setting traps for the unwary. Fed.R.Civ.P. 83, Advisory Committee Notes on the 1985 Amendment. As a result, the district courts are required to provide for public notice and comment before making or amending local rules.

Pretrial mediation and other forms of alternative dispute resolution have been tried in a number of states and installed in the federal district courts as part of a United States Department of Justice experiment. *E.g., Rhea v. Massey–Ferguson, Inc.,* 767 F.2d 266 (6th Cir.1985) (per curiam); *Kimbrough v. Holiday Inn,* 478 F.Supp. 566 (E.D.Pa.1979). The plan in this case was modeled after the plan used in the Eastern District of Michigan and approved by this court in *Rhea,* where a mediation panel recommended awarding the plaintiff $100,000 for his personal injuries. The defendant rejected the recommendation and the case went to trial. The plaintiff eventually received a verdict of $228,000. Because the plaintiff obtained a judgment of

more than 90 per cent of the mediation panel's recommendation, the defendant was found liable under the local rules for the plaintiff's actual trial costs of $5,400. *Rhea,* 767 F.2d at 268.

The defendant contended on appeal that the mediation scheme violated its Seventh Amendment right to a jury trial and was inconsistent with the Federal Rules of Civil Procedure. We held that the mandatory mediation procedures did not violate a party's right to a jury trial, nor were they inconsistent with the federal rules in their encouragement of settlements. *Rhea* at 268–69. Although the holding in *Rhea* upholds the basic validity of the mediation in this case, it did not consider the validity of the penalty and enforcement provisions allowing for the taxation of actual attorneys' fees at issue in this appeal.

In *Alyeska Pipe Line Service Co. v. Wilderness Society,* 421 U.S. 240, 259 n. 31, 95 S.Ct. 1612, 1622 n. 31, 44 L.Ed.2d 141 (1975), the Supreme Court indicated that in a typical diversity case, attorneys' fees should be awarded only if authorized under state law. *See also Acwoo Internat'l Steel Corp. v. Toko Kaiun Kaish, Ltd.,* 840 F.2d 1284, 1291 (6th Cir.1988); *Rockwood Ins. Co. v. Clark Equip. Co.,* 713 F.2d 577, 579 (10th Cir.1983); *Wagstaff v. Manufacturers Bank,* 588 F.Supp. 1389, 1390 (E.D. Mich.1984); 19 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure: Civil 2d* § 4513 (1982). But this rule does not automatically place this case within Michigan law for two reasons. First, permission under state law does not mean a practice is constitutional or consistent with the Acts of Congress or the Federal Rules of Civil Procedure. Second, the attorneys' fees were taxed to the plaintiff pursuant to Local Rule 42, not state law.

### B.

With the enactment of the 1853 Fee Act, "Congress meant to impose rigid controls on cost-shifting in federal courts." *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 107 S.Ct. at 2499. The sweeping reforms of the Act remain intact and are embodied in 28 U.S.C. § 1920, which lists the specific expenses Congress allows a federal court to tax against a losing party. These include fees for clerks and marshals, court reporters and transcripts, printing and witnesses, docket fees and compensation of court-appointed experts. *Id.* For more than a century, the general rule in federal courts has been the "American rule" that, "absent express statutory language or an enforceable contract, litigants pay their own attorneys' fees." *Alyeska Pipe Line,* 421 U.S. at 257, 95 S.Ct. at 1621.

Despite the strong language of the 1853 Fee Act, various federal courts continued to award attorneys' fees as costs based on their asserted inherent or equitable power. 10 C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure: Civil 2d* § 2675 (1983). This practice continued until the Court decided *Alyeska Pipe Line* in 1975, wherein the Supreme Court held that federal courts are not free to fashion new rules and remedies regarding attorneys' fees, and, in the absence of explicit statutory authority, federal courts may only award the attorneys' and proctor's docket fees under 28 U.S.C. § 1923, pursuant to 28 U.S.C. § 1920(5). *Alyeska Pipe Line,* 421 U.S. at 269, 95 S.Ct. at 1627.

The *Alyeska* Court noted that Congress had not repudiated some judicially fashioned exceptions to the American rule of litigation costs. The recognized exceptions were (1) cases involving bad faith or abusive litigation; (2) willful disobedience of a court order; and (3) the common fund doctrine, which supports fee awards in class, trust and shareholder derivative actions. *Id.* at 257–60, 95 S.Ct. at 1621–1623. Notwithstanding those exceptions, Congress has neither retracted the limitations on taxable fees contained in the 1853 Fee Act, "[n]or has it extended any roving authority to the Judiciary to allow counsel fees as costs or otherwise whenever the courts might deem them warranted." *Alyeska Pipe Line,* 421 U.S. at 260, 95 S.Ct. at 1623.

*Alyeska Pipe Line* made it clear that attorneys' fees is an exceptional remedy which depends on the substantive basis of the litigation. Where Congress has deemed it permissible for federal courts to

award actual attorneys' fees, it has said so, as in antitrust actions, 15 U.S.C. § 15(a), exceptional patent litigation, 35 U.S.C. § 285, and other statutes. (In fact, after *Alyeska Pipe Line,* Congress enacted 42 U.S.C. § 1988, which provides for the awarding of attorneys' fees to parties who prevail in the prosecution of certain civil rights.) Absent such explicit authorization, federal courts may exercise their inherent powers to tax attorneys' fees only in the narrowly defined circumstances. *Roadway Express v. Piper,* 447 U.S. 752, 765, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980); *Ray A. Scharer & Co. v. Plabell Rubber Prod., Inc.,* 858 F.2d 317, 320 (6th Cir. 1988).

The Court again addressed attorneys' fees in *Marek v. Chesny,* 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985). There, the plaintiff brought an action against police officers, premised on 42 U.S.C. § 1983 and state tort law, for the shooting and killing of his son. The defendant made an offer of judgment pursuant to Fed.R.Civ.P. 68 of $100,000, including costs and attorneys' fees, that was rejected. At trial, the plaintiff prevailed and was awarded $5,000 on the state law claim, $52,000 on the section 1983 claim, and $3,000 in punitive damages. He then moved for attorneys' fees under 42 U.S.C. § 1988, including fees for work done subsequent to the petitioner's settlement offer. The district court declined to award attorneys' fees for work done after the defendant offered a settlement pursuant to the language in Fed.R.Civ.P. 68; *viz.,* that if an offeree rejects a timely pretrial offer of settlement and later obtains a judgment for less than the offer, he must pay the costs incurred after the making of the offer. The Supreme Court affirmed, holding the word "costs" in Rule 68 was intended to refer to "all costs awardable under the relevant substantive statute," and if the statute allows attorneys' fees as costs, they are included as costs for Rule 68 purposes. *Id.* at 9, 105 S.Ct. at 3017. *But see Delta Air Lines, Inc. v. August,* 450 U.S. 346, 101 S.Ct. 1146, 67 L.Ed.2d 287 (1981) (the cost-shifting provision of Rule 68 applies only in cases where the offeree obtains a judgment less than the pretrial offer; where the offeree loses completely, cost-shifting is not permitted).

As earlier indicated, in *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987), the issue before the Court was whether federal courts could require losing parties to pay compensation for the prevailing party's expert witness fees in excess of the $30.00 per day provided for in 28 U.S.C. § 1821. The Court held the district court had no such power. *Id.* 107 S.Ct. at 2499. The Court noted that "Title 28 U.S.C. § 1920 now embodies Congress' considered choice as to the kinds of expenses that a federal court may tax as costs against the losing party," *id.* at 2496, and that "the comprehensive scope" of the 1853 Fee Act and the faithfulness with which Congress has followed it demonstrated to the Court "that Congress meant to impose rigid controls on cost-shifting in federal courts." *Id.* at 2499. The Court went on to hold that to read Fed.R.Civ.P. 54(d) as "a separate source of power authorizing district courts to tax costs and expenses not enumerated in [28 U.S.C.] § 1920" rendered that section superfluous, in that courts could ignore it whenever they wished. *Id.* at 2497. Therefore, the Court rejected such a reading and ruled that absent express statutory authorization to the contrary, section 1920 defined the term "costs" as used in Fed.R. Civ.P. 54(d). *Id.* at 2497–98.

### C.

The taxation of actual attorneys' fees as costs in federal courts is an extraordinary remedy, allowed normally only where Congress has expressly created an exception to the "American rule" and authorized them in the substantive statutory right at issue in the litigation. Awarding attorneys' fees is not merely a matter of procedural or judicial efficiency, and authority to do so will rarely be found in the inherent powers of the district courts. If a general rule may be read in *Alyeska Pipe Line* and its progeny, it is that the Supreme Court will not allow itself or other federal courts to vary the uniform scheme of costs and fees as set forth in the 1853

Fee Act, other than those narrowly defined circumstances of cases involving bad faith or abusive litigation, disobedience of court orders or the common fund doctrine. As seen in this light, a local rule which purports to authorize a district court to award attorneys' fees as part of a pretrial mediation scheme is contrary to the intent of Fed.R.Civ.P. 68, as interpreted by the Supreme Court in *Crawford Fitting Co., Marek,* and *Alyeska Pipe Line.*

■■■ The lower court found the penalty provision of Local Rule 42 necessary to make litigants give serious consideration to the mediation panel's evaluation. There is no evidence, however, that the extraordinary and exceptional measure of taxing attorneys' fees as costs is the only means by which the pretrial mediation plan could work. *See, e.g., Kimbrough,* 478 F.Supp. at 575 (a party similarly situated to the plaintiff in this case was assessed as a penalty the amount of the arbitration fees). Although we render no opinion on what mediation enforcement measures may be permissible, we do hold that a district court is not empowered to enact a local rule giving itself the authority to award attorneys' fees.

Finally, the defendant argues that while 28 U.S.C. § 1920 is a limit on costs that may be imposed in federal courts, it was not intended by Congress to be a limit on local rule making power. That argument simply cannot withstand scrutiny in light of *Alyeska Pipe Line, Crawford Fitting Co.,* and the many cases between them which recognize that, absent express Congressional action to the contrary, 28 U.S.C. § 1920 is the uniform standard Congress intends federal courts to follow in assessing costs.

### III.

Accordingly, for the foregoing reasons, that portion of the judgment of the district court awarding attorneys' fees is REVERSED, and this case is REMANDED to the district court in order for it to determine appropriate costs to be assessed

against the plaintiff pursuant to 28 U.S.C. § 1920.