**In re TENNESSEE VALLEY STEEL CORPORATION, Debtor.**

**TENNESSEE VALLEY STEEL CORPORATION, by its UNSECURED CREDITORS COMMITTEE, Plaintiff,**

**v.**

**B.T. COMMERCIAL CORPORATION, Nationsbank of North Carolina, N.A., and The Morgan Stanley Leveraged Equity Fund II, Defendants.**

**Bankruptcy No. 94–32813.
Adv. No. 95–3033.**

United States Bankruptcy Court,
E.D. Tennessee.

Sept. 21, 1995.

Frantz, McConnell & Seymour, Robert M. Bailey, Knoxville, Tennessee, for Plaintiff Tennessee Valley Steel Corporation, by its Unsecured Creditors Committee.

Baker, Donelson, Bearman & Caldwell, Richard B. Gossett, Mark D. Hackett, Chattanooga, Tennessee, Nelwyn I. Rhodes, Knoxville, Tennessee, for Defendants B.T. Commercial Corporation and NationsBank of North Carolina, N.A.

Hodges, Doughty & Carson, Thomas H. Dickenson, Knoxville, Tennessee, for Defendant The Morgan Stanley Leveraged Equity Fund II.

RICHARD S. STAIR, Jr., Chief Judge.

The Plaintiff, the Committee of Unsecured Creditors of Tennessee Valley Steel Corporation (Committee), commenced this adversary proceeding on March 10, 1995, with the filing of a complaint entitled "Complaint for Equitable Subordination or Reclassification of Claims and Other Relief" (Complaint).[1] In its Complaint, the Committee avers (1) that the three Defendants, B.T. Commercial Corporation (B.T.), NationsBank of North Carolina, N.A. (NationsBank), and The Morgan Stanley Leveraged Equity Fund II (Morgan Stanley), engaged in "inequitable conduct" both before and after the debtor's commencement of its Chapter 11 case which resulted in injury to the creditors of the debtor or which conferred an unfair advantage on the Defendants; (2) that the Defendants' claims should be equitably subordinated to the claims and interests of all unsecured creditors of the debtor pursuant to 11 U.S.C.A. § 510(c) (West 1993); (3) that the court should determine the extent, validity, and priority of the Defendants' claims pursuant to Fed.R.Bankr.P. 7001; (4) that the court should disallow the Defendants' claims pursuant to 11 U.S.C.A. § 502 (West 1993 & Supp.1995) and Fed.R.Bankr.P. 3007 to the extent they are subordinated to the claims of unsecured creditors; (5) that, alternatively, all or portions of the secured claims of B.T. and NationsBank and the unsecured claim of Morgan Stanley should be recharacterized as equity or capital injections and subordinated to the claims and interests of the unsecured creditors on a level of priority with other equity security holders; and (6) that the Committee, on the debtor's behalf, should be allowed to recover interest on all unsecured claims, together with attorneys' fees, costs, and expenses, prior to a distribution to the Defendants from the assets of the debtor's estate.

On April 18, 1995, B.T. and NationsBank filed a Motion to Dismiss Complaint or, in

---

1. The Complaint, originally filed by the Committee in its own name, was amended on May 19, 1995, by the Committee's filing of an Amended Complaint for Equitable Subordination or Reclassification of Claims and Other Relief (Amended Complaint) in the name of the debtor, Tennessee Valley Steel Corporation. The two complaints are otherwise identical. For purposes of this Memorandum, the court makes no distinction between the Complaint and Amended Complaint and all references to the Complaint are references to the Amended Complaint.

the Alternative, for Summary Judgment (Motion), seeking to have the Complaint dismissed pursuant to Fed.R.Civ.P. 12(b)(6), incorporated into Fed.R.Bankr.P. 7012(b), or, alternatively, for summary judgment pursuant to Fed.R.Civ.P. 56, incorporated into Fed.R.Bankr.P. 7056. On June 27, 1995, the court filed an Order accompanied by a Memorandum on Defendants B.T. Commercial Corporation and NationsBank of North Carolina, N.A. Motion to Dismiss or for Summary Judgment, dismissing the Complaint "to the extent the Plaintiff seeks to disallow the claims of Defendants B.T. Commercial Corporation and NationsBank of North Carolina, N.A., pursuant to 11 U.S.C.A. § 502 (West 1993 & Supp.1995) and Fed. R.Bankr.P. 3007, in the event the claims of these Defendants are subordinated to the claims of unsecured creditors pursuant to 11 U.S.C.A. § 510(c) (West 1993)." The Motion was otherwise denied.

On July 24, 1995, B.T. and NationsBank filed their joint Answer.[2] On August 2, 1995, subsequent to a scheduling conference held July 31, 1995, the court entered a Pretrial Order which, *inter alia*, fixes an April 22, 1996 trial date and, at paragraph 1, defines the issues to be resolved at trial as follows:

A. Whether the Defendants' claims should be equitably subordinated to the claims and interests of all unsecured creditors of the debtor pursuant to 11 U.S.C.A. § 510(c) (West 1993) and, if so, to what extent;

B. Whether, alternatively, all or a portion of the secured claim of the Defendants, B.T. Commercial Corporation and NationsBank of North Carolina, N.A., and the unsecured claim of the Defendant, The Morgan Stanley Leveraged Equity Fund II, should be recharacterized as equity or capital infusions and subordinated to the claims and interests of the unsecured creditors on a level of priority equal to that of other equity security holders; and

C. Whether the Plaintiff, on the debtor's behalf, should be allowed to recover interest on all unsecured claims, together with attorneys' fees, costs, and expenses, prior to a distribution to the Defendants from the assets of the debtor's estate.

On August 3, 1995, the Plaintiff timely filed a Notice of Jury Demand, stating that "pursuant to Fed.Rules Civ.Proc. 38 and 5(d), ... [it] demand[s] ... a trial by jury of any and all issues triable by a jury." On August 8, 1995, the court, *sua sponte*, entered an Order directing the Plaintiff to file a statement identifying the issues itemized in the August 2, 1995 Pretrial Order to which it contends it has a right to a jury trial together with a brief in support of its jury demand, and directing the Defendants to state in writing within fourteen days whether they consent to a jury trial by the bankruptcy judge.[3] The Plaintiff subsequently filed on August 22, 1995, a statement entitled "Brief of Law— Plaintiff's Jury Demand." Also on August 22, 1995, the Defendants, B.T. and NationsBank, filed Defendants' Statement Regarding Jury Trial, stating "that they do not consent to a jury trial by bankruptcy judge as provided in 28 U.S.C. § 157(e)." They also filed a brief entitled "Lenders' Brief in Opposition to Plaintiff's Jury Demand" on August 29, 1995. Morgan Stanley failed to respond.

■ Notwithstanding that B.T., NationsBank, and Morgan Stanley[4] have not con-

---

**2.** By an Order to Extend Time to File Answer entered July 21, 1995, the court approved an agreement that delayed the filing of an Answer by Morgan Stanley pending the outcome of a motion seeking approval of a compromise of the Plaintiff's claims against that Defendant. The motion has not yet been heard.

**3.** This Chapter 11 case, filed on November 11, 1994, is governed by the Bankruptcy Code as amended by the Bankruptcy Reform Act of 1994, which became effective on October 22, 1994. Among those amendments is a new paragraph (e) to § 157 of title 28 of the United States Code, which provides:

If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties. 28 U.S.C.A. § 157(e) (West Supp.1995). On February 27, 1995, the district court designated bankruptcy judges of this district to conduct jury trials.

**4.** Morgan Stanley's failure to respond to the August 8, 1995 Order is deemed by the court as a lack of consent to a jury trial by the bankruptcy judge.

sented to a jury trial by the bankruptcy judge, the Plaintiff has not filed a motion to withdraw this adversary proceeding to the district court pursuant to 28 U.S.C.A. § 157(d) (West 1993) and Fed.R.Bankr.P. 5011. The court will accordingly, on its own motion, address the Plaintiff's entitlement to a jury trial.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(A), (B), (K), (O) (West 1993).

Defendants B.T. and NationsBank are secured creditors asserting a lien approximating $30,000,000 against substantially all proceeds realized from the sale of the debtor's assets on April 28, 1995, for the sum of $30,500,000.[5] The third Defendant, Morgan Stanley, is the majority shareholder of the debtor holding more than seventy-two percent (72%) of its outstanding shares of common stock. It is also the debtor's largest unsecured creditor.[6]

Generally, the Plaintiff, by its present action, seeks to equitably subordinate the claims of B.T., NationsBank, and Morgan Stanley to the claims of all unsecured creditors pursuant to Bankruptcy Code § 510.[7] Alternatively, the Committee seeks subordination through a recharacterization of the respective claims as infusions of equity or capital rather than loans.

The Supreme Court in two cases, *Langenkamp v. Culp*, 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) (per curiam), and *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), discussed whether a party has the right to a jury trial in an adversary proceeding commenced in a bankruptcy court. The court in *Langenkamp* explained:

In *Granfinanciera* we recognized that by filing a claim against a bankruptcy estate the creditor triggers the process of " 'allowance and disallowance of claims,' " thereby subjecting himself to the bankruptcy court's equitable power. If the creditor is met, in turn, with a preference action from the trustee, that action becomes part of the claims-allowance process which is triable only in equity. In other words, the creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's *equity jurisdiction*. As such, there is no Seventh Amendment right to a jury trial.

498 U.S. at 44–45, 111 S.Ct. at 331 (citations omitted) (quoting *Granfinanciera*, 492 U.S. at 58, 109 S.Ct. at 2799 (quoting *Katchen v. Landy*, 382 U.S. 323, 335, 86 S.Ct. 467, 476, 15 L.Ed.2d 391 (1966))).

In *Granfinanciera*, the Supreme Court stated:

"[A]lthough petitioner might be entitled to a jury trial on the issue of preference if he presented no claim in the bankruptcy proceeding and awaited a federal plenary action by the trustee, *Schoenthal v. Irving Trust Co.*, 287 U.S. 92, 53 S.Ct. 50 [77 L.Ed. 185 (1932)], when the same issue arises as part of the process of allowance and disallowance of claims, it is triable in equity."

492 U.S. at 58, 109 S.Ct. at 2799 (quoting *Katchen*, 382 U.S. at 335, 86 S.Ct. at 476).

Although the facts in *Langenkamp* and *Granfinanciera* are inapposite to the ones presently before the court, the principles

---

5. The Proof of Claim filed by B.T. and NationsBank on January 27, 1995, asserts a secured claim in the amount of $28,908,639.29, plus costs, attorneys' fees, and interest. It is undisputed that agreed upon adjustments to the sale price of the debtor's assets make B.T. and NationsBank undersecured creditors. Furthermore, by an Order entered June 20, 1995, the court authorized a distribution of all sale proceeds in excess of $10,200,000 to B.T. and NationsBank.

6. Morgan Stanley, by its Proof of Claim filed January 11, 1995, asserts a nonpriority unsecured claim against the debtor in the amount of $19,045,461.

7. Code § 510 provides in material part at subsection (c):

[A]fter notice and a hearing, the court may—
(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or
(2) order that any lien securing such a subordinated claim be transferred to the estate.
11 U.S.C.A. § 510(c) (West 1993).

enunciated by the Supreme Court are controlling. In *Langenkamp*, the Court held that depositors who submitted claims against the debtors' bankruptcy estates had no Seventh Amendment right to a jury trial when sued by the trustee to recover allegedly preferential transfers. Conversely, the Court in *Granfinanciera* held that parties who had not submitted claims against the bankruptcy estate had a right to a jury trial when sued by the trustee to avoid allegedly fraudulent conveyances. While the Supreme Court in *Granfinanciera* noted that preference and fraudulent conveyance actions "were often brought at law in late 18th–century England," thus entitling the creditor to a jury trial, both *Langenkamp* and *Granfinanciera* establish that once the creditor files a claim in the debtor's bankruptcy estate, all ensuing avoidance actions become integral to the restructuring of the debtor-creditor relationship and therefore become triable in equity by the bankruptcy court. *Granfinanciera*, 492 U.S. at 43, 58, 109 S.Ct. at 2791, 2799; *Langenkamp*, 498 U.S. at 45, 111 S.Ct. at 331.

■■■ By definition, equitable subordination, whether under Code § 510(c) or through a reclassification of the Defendants' claims from loans to contributions of equity or capital, involves the restructuring of the debtor-creditor relationship and thus focuses on the bankruptcy court's equity jurisdiction. As observed in one commentary,

> Subordination is an equitable remedy in which the order of payment rather than the existence of the debt is in issue. If recognized principles of equity have been violated by the claimant, the court has the power, under section 510(c) of the Code, to subordinate or postpone his claim....

A creditor whose claim has been subordinated does not cease to be a creditor under the Code. Such a creditor continues to enjoy all of the rights of a creditor except to share in the distribution of the estate on a parity with the other creditors, although the court might conclude that it would be equitable to exclude him from certain activities, such as voting for a trustee in a liquidation case.

3 *Collier on Bankruptcy* ¶ 510.02 (15th ed. 1995) (footnote omitted).

The Plaintiff, in its brief filed August 22, 1995, in support of its jury demand, acknowledges that "equitable relief is one of the remedies sought," but avers that "the real and substantial relief is [P]laintiff's proof of damages caused to unsecured creditors by the actions of [D]efendants and the recovery of interest, costs, and attorney's fees which will augment the estate." The Plaintiff further contends that "[s]aid legal issues ... [are] a matter properly submitted to a jury." Brief of Law—Plaintiff's Jury Demand, at 2–3. The court disagrees.

■■■ First, the Plaintiff does not seek damages from the Defendants. Rather, it seeks to subordinate the Defendants' claims to the claims of all other unsecured creditors pursuant to Code § 510(c) or by recharacterizing the Defendants' claims as infusions of capital.[8] Second, the Plaintiff cites no authority for its contention that if successful in the prosecution of its Complaint the court may award it attorneys' fees. Generally, the law in this Circuit is that in the absence of a contractual or statutory entitlement to attorneys' fees, the trial court has no discretion to award them. *Tiedel v. Northwestern Mich. College*, 865 F.2d 88, 91–94 (6th Cir.1988); *Martin v. Bank of Germantown (In re Mar-*

---

**8.** The Committee's action seeking a recharacterization of the Defendants' loans as capital contributions is distinct from its action seeking equitable subordination pursuant to Code § 510(c) based on the Defendants' inequitable conduct, defined to include undercapitalization. *See Blasbalg v. Tarro (In re Hyperion Enters., Inc.)*, 158 B.R. 555, 559–63 (D.R.I.1993), and cases cited therein; *see also Summit Coffee Co. v. Herby's Foods, Inc. (In re Herby's Foods, Inc.)*, 2 F.3d 128, 132–33 (5th Cir.1993) ("[I]f an insider makes a loan to an undercapitalized corporation, the combination of undercapitalization and the insider loan may allow the bankruptcy court to recharacterize the loan as a capital contribution, or to equitably subordinate the loan to the claims of other creditors." (footnote omitted)); *Roth Steel Tube Co. v. Commissioner*, 800 F.2d 625, 630 (6th Cir.1986) (identifying eleven factors for the purpose of determining whether an advance is more properly classified as a capital contribution or a loan), *cert. denied*, 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987). The result, however, is the same: subordination of the Defendants' claims to the payment of all unsecured claims.

tin), 761 F.2d 1163, 1167–68 (6th Cir.1985). Nonetheless, the court makes no dispositive ruling in this Memorandum on the issues of interest, costs, and attorneys' fees. Rather, the court concludes that in this adversary proceeding such issues, regardless of their merit, arise out of the claims resolution process and are thus equitable in nature.

In sum, the court concludes that the Plaintiff has no Seventh Amendment right to a jury trial on any issue in this adversary proceeding.[9] The Plaintiff's Notice of Jury Demand will be stricken and this matter will proceed to trial in the bankruptcy court in accordance with the August 2, 1995 Pretrial Order. An appropriate Order will be entered.

---

**9.** The court need not determine whether a debtor waives the right to a jury trial upon the filing of a bankruptcy petition or upon the creditors' filing of proofs of claims; or, instead, whether legal actions are converted into equitable ones. *See Billing v. Ravin, Greenberg & Zackin, P.A.,* 22 F.3d 1242, 1250–54 (3d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 508, 130 L.Ed.2d 416 (1994);

*Citicorp N. Am., Inc. v. Finley (In re Washington Mfg. Co.),* 133 B.R. 113, 117–18 (M.D.Tenn. 1991). The Plaintiff acknowledges that it seeks equitable relief, and the Plaintiff's actions are "part of the claims-allowance [and priority] process" and "integral to the restructuring of the debtor-creditor relationship." *Langenkamp,* 498 U.S. at 45, 111 S.Ct. at 331.