*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0350P (6th Cir.)
File Name: 00a0350p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

SUSAN MENCER and WALTER
MENCER,
       *Plaintiffs-Appellants,*

       *v.*

PRINCETON SQUARE
APARTMENTS, a Michigan
Limited Liability Corporation,
and CHUCK BABCOCK,
       *Defendants-Appellees,*

JANE DOE, TAMMY DOE, and
SHELLY DOE,
       *Defendants.*

Nos. 99-1897/2074

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 98-60047—George C. Steeh, District Judge.

Submitted: September 19, 2000

Decided and Filed: October 3, 2000

Before:  MERRITT and GILMAN, Circuit Judges; BELL, District Judge*

_____

**COUNSEL**

**ON BRIEF:**  Creighton V. Adams, BROWN, STANLEY & ASSOCIATES, Detroit, Michigan, for Appellants.  David B. Landry, Michelle E. Mathieu, NEMIER, TOLARI, LANDRY, MAZZEO & JOHNSON, Farmington Hills, Michigan, for Appellees.

_____

**OPINION**

_____

MERRITT, Circuit Judge.  Plaintiffs are a husband and wife of different races.  Defendant Princeton Square Apartments is a 200-unit residential complex in Taylor, Michigan.  Claiming violations of federal and state fair housing laws, plaintiffs allege that defendant denied their rental application because of their interracial marriage.  The parties requested mediation.  A mediation tribunal found for the plaintiffs, who rejected the award.  At the close of the plaintiffs' case during a bench trial, the court granted the defendants' motion for judgment as a matter of law.  The court also granted mediation sanctions against plaintiffs.  The question presented on appeal is whether the plaintiffs established a *prima facie* case of housing discrimination.  We agree with the district court that plaintiffs failed to meet this burden.  Accordingly, we must also decide whether the award of mediation sanctions was proper.  Though the shifting of attorney fees is an exceptional tool, the parties here stipulated its use.  We will not disturb that election.

---

*The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

such as the use of sanctions and the binding effect of the proceedings. E.D. MICH. R. 16.3(c)(2). The parties here did so. They could have modified the procedural rules. They did not, instead adopting the state court rules in their entirety as the default mediation scheme. Unlike *Tiedel*, the trial court here did not rely on its "inherent power" to grant mediation sanctions. The trial court was instead authorized by the consent of the parties. Accordingly, the district court refused to revise the parties' chosen mediation strategy on the basis of the defendants' income or the judgment obtained. Neither will we.

For the foregoing reasons, we affirm the district court.

## I.

Susan Mencer is white and Walter Mencer is African-American. They married in 1992. By 1997, the couple had separated. Mr. Mencer was living in a space maintained by his mother's church, and Mrs. Mencer was living with her mother. The couple sought to reconcile and rent together in defendant's apartment complex. Mr. Mencer met with defendant Charles Babcock, owner of the apartment complex, and obtained an application. Mr. Babcock told plaintiff to complete the application and furnish proof of income. Mr. Mencer returned for a second application after losing the first. His wife did not accompany him into defendant's office on either occasion. Mr. Mencer does not allege that Mr. Babcock discriminated against him during these initial meetings. According to plaintiff, defendant had been "somewhat friendly." Trial Tr. 64, J.A. 289.

In March 1997, both plaintiffs returned with a completed application, identification, and paycheck stubs. According to the plaintiffs, Mr. Mencer entered the defendant's office first "and then my wife came in, looked around there, and I told him [Mr. Babcock] we were together and the next thing you know his whole attitude just changed." Trial Tr. 24, J.A. 249.

According to Mr. Babcock, he routinely examines the rental application, proof of income, and prior landlord references of all potential tenants. Trial Tr. 181, J.A. 406. He also applies an income requirement that at least one tenant's net pay equal three times the rent. This policy is not documented, but defendant testified that he devised the formula about 15 years ago as "a general rule of thumb." Trial Tr. 178, J.A. 403. As part of that policy, defendant does not combine the income of two spouses to satisfy the financial requirement. At trial, he explained that were a couple to separate, one tenant's income would be otherwise insufficient. Trial Tr. 197, J.A. 422. The Mencers do not recall that defendant informed them of any income requirements.

After plaintiffs had presented their completed application, defendant reviewed their proof of income. The Mencers' application indicated that they did not have a bank account. J.A. 62. It also indicated that Mr. Mencer had been working at his current job for four weeks. The plaintiffs listed their monthly gross income as $2000.00. Mrs. Mencer's paycheck stub indicated a gross income of $1099.34 monthly. J.A. 65. Mr. Mencer's gross pay was $916.79 monthly. Their net monthly incomes were $980.10 and $846.64, respectively. They sought a two-bedroom apartment, whose rent Mr. Mencer recalled to be $505.00 per month but defendant stated was $545.00. Applying defendant's income requirement, three times the lower figure is $1515.00, more than either plaintiff made singly. Mr. Mencer told defendant that he was also receiving Social Security Disability Income. Defendant replied that he did not consider this in the income requirement because it was not garnishable. Trial Tr. 190, J.A. 415.

Defendant also examined plaintiffs' identification. Mr. Mencer did not have a driver's licence. His identification card listed two addresses, one on the front and another on the back. Mrs. Mencer's licence indicated a third address. Plaintiffs told defendant that they were separated. Their application listed a fourth address, a unit operated by the church of Mr. Mencer's mother. Mr. Mencer told defendant that this was plaintiffs' present address. After defendant reviewed these addresses, he expressed his doubt as to whether Mr. Mencer had ever signed a lease before. At trial, Mr. Mencer testified that he had never signed a lease before meeting with defendant. Trial Tr. 53, J.A. 278.

After examining plaintiffs' application and proof of income, defendant told them that he was looking for stable tenants and that they appeared unstable. Trial Tr. 32, J.A. 257. At trial, defendant explained that his evaluation of financial stability was based on "job and income." Trial Tr. 182, J.A. 407. According to plaintiffs, Mr. Babcock then placed the application in a drawer and began helping another applicant.

plaintiffs rejected a $5000 offer by defendants and a favorable $3000 mediation evaluation. Order Granting Mediation Sanctions at J.A. 21. The court properly found that plaintiffs had ample opportunity to calculate the costs and benefits of a trial. Their protest of the defendants' relative wealth cannot now revisit that calculus.

Plaintiffs also claim that mediation sanctions discourage parties from pursuing legitimate claims to trial, undercutting the purpose and policy of civil rights laws. This point is well-taken. We have previously recognized that fee-shifting mechanisms are mighty levers to be used only sparingly. *Tiedel v. Northwestern Michigan College*, 865 F.2d 88 (6th Cir. 1988). That is why the "American rule" broadly applies in federal courts, whereby "absent express statutory language or an enforceable contract, litigants pay their own attorneys' fees." *Id*. at 92 (quoting *Alyeska Pipe Line Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257 (1975)). In *Tiedel*, a district court ordered *sua sponte* that a product liability action be heard in mediation. The mediation panel found for the defendants in its evaluation, which the plaintiff rejected. Trial commenced and the jury also found for the defendant. The local rules allowed for an award of attorney fees as part of its pretrial mediation plan. Defendant moved for mediation sanctions and was granted trial expenses and attorneys fees for $110,993.11. On appeal, this Court reversed that award, holding "a district court is not empowered to enact a local rule giving itself the authority to award attorneys' fees." *Id*. at 94.

This case is different. Here, plaintiffs requested that their claim be referred to mediation. Stipulated Req. for Mediation at J.A. 38. The district court mediation rule states that proceedings are to be conducted according to MICH. CT. R. 2.403. E.D. MICH. R. 16.3(a). In their request for mediation, signed by counsel, the parties agreed to be bound by the state mediation rules, including "sanctions relating to costs and attorneys fees provided by such rule." Stipulated Req. for Mediation at J.A. 38. Yet the local rule is permissive, allowing parties to stipulate to the specific tools of mediation,

the United States District Court for the Eastern District of Michigan allow parties to stipulate the procedural rules for mediation. E.D. MICH. R. 16.3(c)(2). In their request, parties agreed to be bound by the mediation scheme of Michigan Court Rule 2.403, expressly stipulating the provisions for sanctions and attorney fees. Stipulated Req. for Mediation at J.A. 38. The Wayne County Mediation Tribunal unanimously evaluated the case for $3000 in favor of plaintiffs. Mediation Evaluation at J.A. 211. The plaintiffs rejected this award. Their case proceeded to a bench trial, where the trial judge granted defendants' motion for judgment as a matter of law. The defendants then moved for mediation sanctions under MICH. CT. R. 2.403(O), including costs and attorney fees, in the amount of $8010.00. The trial court granted the motion but decreased the hourly rate charged for attorney fees, awarding the defendants $5874.00. Order Granting Mediation Sanctions at J.A. 24. Plaintiffs now appeal the propriety of the sanctions. They do not, however, question the amount awarded or the applicability of the mediation rules.

Plaintiffs' first claim that the economic disparity between the parties makes the award unjust. Neither the state nor the district court rules on mediation contemplate an inquiry into hardship, however. Michigan courts will generally uphold an award of attorney fees under the state mediation rules unless the decision is "grossly violative of fact and logic." *Michigan Basic Property Ins. Ass'n v. Hackert Furniture Distrib. Co.*, 486 N.W.2d 68, 70 (Mich. Ct. App. 1992). In fact, there is state authority to suggest that the award of mediation sanctions under MICH. CT. R. 2.403 is mandatory, not discretionary, except in narrow circumstances. *Great Lakes Gas Transmission Ltd. Partnership v. Markel*, 573 N.W.2d 61, 63 (Mich. Ct. App. 1997). The Michigan rule does allow the court to refuse costs in the "interests of justice" for a judgment entered as a result of ruling on a motion. MICH. CT. R. 2.403(O)(11). The district court, however, did not find the award to be unjust because plaintiffs had an opportunity to assess their chances at trial. Here, the record shows that

The Mencers claim that defendant denied their application based on their interracial marriage. Mr. Mencer testified that defendant's "whole attitude just changed" when plaintiffs entered the rental office together. Trial Tr. 24, J.A. 249. Mrs. Mencer described defendant's demeanor during their meeting as "rude" as well as "condescending and nasty." Trial Tr. 143, J.A. 368. According to Mrs. Mencer, defendant said he required stable tenants because there was "riffraff" then living in the complex. Trial Tr. 142, J.A. 367. At trial, however, Mrs. Mencer testified she had "no idea" how that comment related to them. Trial Tr. 143, J.A. 368.

In April 1997, Mr. Mencer contacted the Fair Housing Center of Metropolitan Detroit. The Center dispatched several "testers" to evaluate defendant's treatment of rental applicants. In March 1998, plaintiffs brought this civil rights action, claiming violations of 42 U.S.C. §§ 1981, 1982 and 3601 et. seq., as well as Michigan fair housing provisions at MICH. COMP. LAWS § 37.2501 et. seq.. During a bench trial, the court granted defendants' motion for judgment as a matter of law on all claims. We affirm.

Federal fair housing law prohibits using impermissible criteria such as race, color, or familial status in real estate transactions. 42 U.S.C. § 3604(a). Other federal anti-discrimination laws confirm that citizens should enjoy equal rights to lease property and enter contracts without regard to race or color. 42 U.S.C. §§ 1981, 1982. Michigan has enacted an analogous fair housing provision, the Elliott-Larsen Civil Rights Act, on which plaintiffs rely. MICH. COMP. LAWS § 37.2502. In interpreting Michigan's fair housing law, we refer to its federal counterpart for guidance. *Jackson v. Whitehouse*, No. 92-CV-74725-DT, 1993 U.S. Dist. LEXIS 18766, at *14 (E.D. Mich. Nov. 23 1993). In this Circuit, the same analysis applies to all federal fair housing violations claimed in this case. *Id*. All turn on the three-part evidentiary standard first developed in the employment discrimination context by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Courts have adapted

this test to fair housing claims by requiring the plaintiff to first establish a *prima facie* case of discrimination. Then, in response, the defendant must offer a legitimate nondiscriminatory reason for the housing decision made. Finally, the plaintiff must show that the proffered reason is a pretext that masks discrimination. *Selden v. United States Dep't of Hous. and Urban Dev.*, 785 F.2d 152, 160 (6th Cir. 1986).

Plaintiffs here failed to meet the first prong of this standard. A *prima facie* housing discrimination case is shown when the plaintiff proves: (1) that he or she is a member of a racial minority, (2) that he or she applied for and was qualified to rent or purchase certain property or housing, (3) that he or she was rejected, and (4) that the housing or rental property remained available thereafter. *Id*. at 159. Being "qualified to rent" has been defined as "ready and able to accept defendants' offer to rent or buy." *Schanz v. Village Apartments*, 998 F. Supp. 784, 788 (E.D. Mich. 1998). In *Schanz*, plaintiff claimed that he was denied an apartment due to his mental disability. The court found, however, that the defendant had "justifiable business reasons" for rejecting the application. *Id*. at 789. That plaintiff did not have a job at the time of the application, was receiving inadequate Social Security Disability Benefits, and did not meet the apartment owner's income formula as to creditworthiness.

The trial court in this case likewise concluded that "no reasonable landlord would have seriously entertained entering into a lease arrangement" with plaintiffs. Trial Tr. 217-218, J.A. 442-443. The record supports that the plaintiffs lacked steady rental history and that their application interview with defendant revealed four different addresses. The Mencers also failed to meet the defendant's income formula. According to Mr. Babcock, this formula—as well as his refusal to combine marital income or accept Social Security Disability Income—were policies of long standing. The plaintiffs did not show that these were applied in a discriminatory fashion. The trial court found that defendant's

policies alone did not indicate that his housing decisions were based on race. This conclusion is not clearly erroneous.

Nor did the trial court infer discrimination from Mr. Babcock's treatment of the "testers" from the Fair Housing Center. Defendant's rejection of plaintiffs as tenants was based on their completed application and proof of income. Neither tester who appeared as a witness completed an application or proceeded beyond an initial discussion of rental terms and availability with defendant. That the defendant was welcoming to potential applicants suggests that he is a good salesman. It does not, however, impugn his reasons for denying plaintiffs housing on the basis of their completed and documented application. The trial court accorded the testers' evidence no weight, and this conclusion is not clearly erroneous.

Whether defendant was brusque, dismissive, or "changed his attitude" upon realizing that the couple was interracial was a matter of recollection for the witnesses and a matter of credibility for the trial court. The court found that any "change in attitude" coincided with defendant's review of the completed application and proof of income. Trial Tr. 216, J.A. 441. This is supported by the evidence.

We affirm the judgment for defendants. Plaintiffs did not establish a *prima facie* case of housing discrimination. The Mencers were not financially qualified to rent according to defendant's policies. They did not show that defendant's income requirements were born of bias or inconsistently applied. The court could have reasonably found that defendant was making a judgment only as to risk and not as to race.

## II.

In affirming judgment for the defendants, we must also decide whether mediation sanctions are proper against plaintiffs. In February 1999, the parties requested mediation. Stipulated Req. for Mediation at J.A. 38. The local rules of