Joseph M. MARBLY, Plaintiff,

v.

**HOME PROPERTIES OF NEW YORK, a/k/a The Lakes Apartment Community, Defendant.**

No. 01–CV–70719.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 10, 2002.

Joseph Marbly, Southfield, MI, pro se.

Lee Ravitz, Ravitz & Tucker, Bingham Farms, MI, for defendant.

*OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT*

STEEH, District Judge.

Plaintiff Joseph Marbly, appearing *pro se*, moves for summary judgment as to his claims that his landlord defendant Home Properties of New York ("HPNY") is liable under 42 U.S.C. §§ 1981 and 1982, and the Fair Housing Act of 1968, 42 U.S.C. § 3601 ("FHA"), for violating his civil rights by disproportionately raising his rent under a renewed lease, and denying him rental repairs and maintenance, all on the basis of plaintiff's African–American race. The facts and legal arguments presented in the parties' briefs are sufficient to adjudicate the motion. Oral argument would not significantly aid the decisional process. Pursuant to E.D. Mich. Local R. 7.1(e)(2), it is ORDERED that the motion be resolved without oral argument. For the reasons set forth below, plaintiff's motion for summary judgment will be DENIED.

I.

Plaintiff alleges in his March 9, 2001 Complaint that he moved into the Lakes Apartments in Southfield, Michigan in January 1999, and that his monthly rent was $745.00. Plaintiff alleges that, in January 2000, he was offered a renewal lease at a rate of $755.00 a month. Plaintiff alleges that nine months later, in October 2000, he received a lease renewal notice that a renewed lease would require $820.00 monthly rent, the same rate charged new tenants. Plaintiff alleges that, upon talking to a few long-time tenants, he discovered that Caucasian tenants' monthly rental rates were not increased to the new $820.00 monthly rate. Plaintiff also alleges that new major appliances such as washers and dryers were delivered to Caucasian ten-

ants, but not to African–American tenants. Plaintiff alleges his complaints about a valve pipe link in his bathroom, broken blinds, a dim or inoperative outside hall light, an intentionally broken building door, and an unkept stairway all went unheeded. Plaintiff alleges the rent increase and unresponsiveness to his complaints constituted illegal discrimination based on his African–American race. Plaintiff seeks an order requiring defendant HPNY to reduce his 2001 lease rate to $765.00 per month and reimburse plaintiff for any overpayments, and to complete all necessary repairs. Plaintiff also seeks $3.0 million dollars in compensatory damages for pain and suffering, and $4.0 million in punitive damages.

Plaintiff now moves for summary judgment of his race discrimination claims proffering a lease "Renewal Response Form" indicating his interest in renewing his twelve month lease at $820.00 per month effective January 1, 2001.[1] Plaintiff also proffers a document indicating proposed rental increases for 2001 as a function of "Style", "Street Rent as of 2/1/01", and "Street Rent as of 5/01/2001". Plaintiff further proffers correspondence between himself and Property Manager Michelle Stamplis, and lease agreements executed by: (1) Angela Mangiapane, $815.00 per month effective June 1, 2000 (executed May 4, 2000); Phillip Funk, $810.00 per month effective September 1, 2000 (executed August 24, 2000); Lawrence Rosenthal, $770.00 per month effective June 1, 2000 (executed June 30, 2000); Lizbeth Better, $775.00 per month effective January 1, 2001 (executed December 18, 2000); Kimberly Kelly, $815.00 per

month effective November 1, 2000 (executed November 9, 2000).

Defendant HPNY proffers in response a November 30, 2001 affidavit of Property Manager Michelle Stamplis attesting that monthly rental rates vary depending upon individual apartment size and layout, length of lease term, and market conditions. Stamplis also attests that the $820.00 monthly lease rate assessed for plaintiff was the same rate charged to all tenants that applied for the same style apartment in December 2000 and January 2001. Stamplis further attests that the individuals relied upon by plaintiff to demonstrate race discrimination—Mangiapane, Funk, Rosenthal, Better, and Kelly—occupied 1 bedroom apartments with a different floor plan than plaintiff's apartment, and executed their renewals when there were large numbers of vacancies in the 20 unit complex, facilitating their reduced rates. Stamplis also attests that, of the 20 units at plaintiff's complex, 4 are vacant, 11 occupants pay a higher rate than plaintiff, 2 pay the same rate, 2 pay a lesser rate, and at least 6 of the 11 that pay a higher rate are Caucasian.

## II.

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See FDIC v. Alexander*, 78 F.3d 1103, 1106 (6th Cir.1996). The Supreme Court has affirmed the court's use of summary judgment as an integral

---

1. The proffered form actually states "effective 1/01/00." The form also notes that the completed renewal must be returned "to our office no later than 12/22/00." Thus, it is rea-

sonable to infer that the rental rate would become effective on January 1, 2001, not January 1, 2000.

part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Kutrom Corp. v. City of Center Line,* 979 F.2d 1171, 1174 (6th Cir.1992).

The standard for determining whether summary judgment is appropriate is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Winningham v. North Am. Resources Corp.,* 42 F.3d 981, 984 (6th Cir. 1994) (citing *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir.1989)). The evidence and all inferences therefrom must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Enertech Elec., Inc. v. Mahoning County Comm'r,* 85 F.3d 257, 259 (6th Cir.1996); *Wilson v. Stroh Co., Inc.,* 952 F.2d 942, 945 (6th Cir.1992). If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 270, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *see also Adams v. Philip Morris, Inc.,* 67 F.3d 580, 583 (6th Cir.1995).

### III.

■ Construing the pleadings and evidence in a light most favorable to defendant HPNY, the proffered evidence presents sufficient disagreement as to whether defendant discriminated against plaintiff on the basis of race that the issue must be submitted to the jury. *Winningham,* 42 F.3d at 984; *Matsushita Elec. Indus. Co., Ltd.,* 475 U.S. at 587, 106 S.Ct. 1348; *Enertech Elec., Inc.,* 85 F.3d at 259; *Wilson,* 952 F.2d at 945. In the Sixth Circuit, federal housing claims alleged under the FHA as well as 42 U.S.C. §§ 1981 and 1982 turn on the three part evidentiary standard first articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Mencer v. Princeton Square Apartments,* 228 F.3d 631, 634 (6th Cir.2000). Once the plaintiff establishes a prima facie case of discrimination—that he is a member of the protected class, that he applied for and was qualified for certain housing, that he was rejected, and that the property remained available[2]—the defendant must respond with a legitimate nondiscriminatory reason for its housing decision. *Id.* at 634. Here, assuming for purposes of the instant motion that plaintiff Marbly has established a prima facie case of race discrimination, defendant HPNY has met its burden of coming forward with specific facts, as attested to by Property Manager Michelle Stamplis, indicating legitimate nondiscriminatory reasons for defendant charging plaintiff an $820.00 monthly rental rate, a rate higher than that charged to the presumably Caucasian Mangiapane, Funk, Rosenthal, Better, and Kelly. *Id,* at 634; *First Nat'l Bank,* 391 U.S. at 270, 88 S.Ct. 1575; *Adams,* 67 F.3d at 583. Plaintiff's own Exhibit B indicates defendant charges different monthly rates depending on the "Style" of apartment within the complex. Mangiapane, Funk and Rosenthal executed renewed leases, respectively, 7 months,

---

**2.** Here, plaintiff alleges he is a member of the protected class of African Americans, that he applied for and qualified to rent his apartment, that he was rejected at a monthly rate available to potential Caucasian tenants, and that the apartment remained available to him at a higher rate required to be paid by nonminority tenants.

4 months and 6 months before plaintiff executed his renewal, permitting an inference consistent with Stamplis' attestations that market conditions, and not race, influenced the lower monthly rates of renewal assessed against these three tenants. Stamplis explains that Better's $775.00 rate [3] was the product of an error, and that Better vacated the property after being informed of the mistake. With respect to Kelly, Stamplis explains that Kelly was assessed $5.00 less than plaintiff's monthly renewal rate because Kelly's rate took effect on November 1, 2000 under a new lease, prior to 2001 rate changes taking effect. Plaintiff has not come forward with evidence that Mangiapane, Funk, Rosenthal, Better, or Kelly, or any other fellow tenant, was treated differently with respect to repairs or maintenance than was plaintiff as an African–American. Stamplis has attested that plaintiff's appliances were repaired instead of replaced because they could be repaired. In sum, it remains possible for defendant to prove at trial that plaintiff was treated differently due to legitimate nondiscriminatory reasons. *Mencer*, 228 F.3d at 634. Plaintiff, of course, will be given the opportunity at trial to show that defendant's proffered legitimate reasons are merely a pretext for race discrimination. *Id*, at 634.

██ Plaintiff argues that defendant's December 7, 2001 response brief was untimely, attesting that his motion for summary judgment was served on defendant on October 29, 2001. Assuming plaintiff served defendant on October 29, 2001, defendant's response brief, filed on December 7, 2001, was due on November 23, 2001. *See* Fed.R.Civ.P. 6(a), (e); E.D. Mich. LR 7.1(d)(1)(B). Plaintiff has failed to articulate how his position was prejudiced by the 14 day delay. The court has taken into account the arguments and proffered evidence in advanced in plaintiff's December 10, 2001 reply. The court further notes that plaintiff's attestation that he "hand delivered" the motion on October 29, 2001 does not establish that proper service was made upon defendant HPNY. *See* Fed.R.Civ.P. 5(b). Plaintiff admits that he did not file an accurate certificate of service. *See* Fed.R.Civ.P. 5(d). Plaintiff is not entitled to summary judgment on the basis that defendant filed an untimely response brief.

Finally, plaintiff argues that he is entitled to summary judgment based on a theory of discriminatory impact. In analyzing discriminatory impact claims, courts have likewise applied the three step *McDonnell Douglas* approach, denying relief where the plaintiff fails to overcome a defendant's proffered non-discriminatory reasons for a housing decision. *See Soules v. U.S. Dept. of Housing and Urban Development*, 967 F.2d 817 (2d Cir.1992) (affirming dismissal of discriminatory impact claim after applying *McDonnell Douglas* analysis and finding plaintiff failed to rebut proffered legitimate reasoning as pretextual). The record evidence, construed most favorably to non-moving defendant HPNY, does not compel a finding that HPNY's proffered legitimate reasons for charging plaintiff $820.00 monthly rent effective January 1, 2001 are pretextual as a matter of law. *Winningham*, 42 F.3d at 984. Accordingly,

Plaintiff's motion for summary judgment is hereby DENIED.

SO ORDERED.

---

3. Stamplis correctly identifies Better's Building 24, Apartment 301, but incorrectly states that the rate charged in Better's renewal was $800.00 per month rather than $775.00 per month.