Kenneth Novikoff, Michael Penner, Rivkin, Radler & Kremer, Uniondale, NY, for defendants.

### Richard SALUTE and Long Island Housing Services, Plaintiffs,

v.

### STRATFORD GREENS, a co-partnership, Gerald Monter, Elliot Monter and Holiday Management Associates, Defendants.

### No. 93 CV 4874 (JG).

United States District Court,
E.D. New York.

May 31, 1995.

*MEMORANDUM AND ORDER*

GLEESON, District Judge:

Richard Salute and Long Island Housing Services have brought this purported class action[1] against Stratford Greens, Gerald Monter, Elliot Monter and Holiday Management Associates, alleging that the defendants' refusal to rent Salute an apartment in the Stratford Greens apartment complex constitutes a violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, and the United States Housing Act, 42 U.S.C. § 1437 et seq. Before the Court are the plaintiffs' motions (1) to amend the complaint to add Marie Kravette as a plaintiff and (2) for a preliminary injunction requiring the defendants to

there is no similar interest of the defendant's at stake here.

1. The parties have agreed to postpone the motion for class certification pending the outcome of their cross-motions for summary judgment.

rent an apartment to Kravette at the Stratford Greens complex in Hauppauge, New York.

The defendants have abandoned their opposition to the first motion, which is therefore granted. For the reasons set forth below, the motion for preliminary injunctive relief is also granted.

### A. *The Claims of Richard Salute*

The plaintiffs allege that Richard Salute is a disabled person as defined by the Fair Housing Act, 42 U.S.C. § 3602(h). (Plaintiffs' Second Amended and Supplemental Complaint ("Complaint") ¶ 14.) Due to Salute's handicap, he currently receives disability payments from the Social Security Administration as well as food stamps and other benefits. (*Id.* ¶ 15.)

In the late 1980s, while Salute was living in a basement apartment in East Northport, New York, his medical condition allegedly forced him to seek alternative housing. Salute applied for and—after a wait of five years—received a "Section 8 certificate" from the Suffolk Community Development Corporation. (Complaint ¶ 19.) Under the Section 8 program, a certificate holder pays a maximum of 30% of his income toward rent, and the federal government pays the difference. However, in order to participate in the program, a certificate holder must locate an apartment which has a rent that falls within the Department of Housing and Urban Development's ("HUD's") fair market rent guidelines for the community in question. In the event that the certificate holder is unable to locate a suitable apartment within a limited time period, the certificate reverts back to the issuing agency. *See generally* Deborah Kenn, *Fighting the Housing Crisis with Underachieving Programs: The Problem with Section 8,* 44 Wash. U.J.Urb. & Contemp.L. 77 (1993).

Salute alleges that in February of 1993, he visited Stratford Greens in search of an apartment. After being shown an apartment which met his needs, Salute was rejected as a tenant on account of his participation in the Section 8 program. Salute further alleges that he was not able to locate another suitable apartment within the statutory period, and thus was forced to give up his Section 8 certificate. (Complaint ¶¶ 21–28.)

Salute contends that Stratford Greens' refusal to accept him as a tenant violated the Fair Housing Act in two respects: (a) it violated 42 U.S.C. § 3604(f)(1) and (f)(2) because the policy of excluding Section 8 certificate holders has a discriminatory impact on Suffolk County's handicapped population; and (b) it violated 42 U.S.C. § 3604(f)(3)(B) because the policy, when applied to Salute, constitutes an unlawful refusal to make the "reasonable accommodations" necessary to afford handicapped persons an equal opportunity to use and enjoy a Stratford Greens apartment. Salute also alleges that the defendants violated the United States Housing Act, 42 U.S.C. § 1437f(t)(1)(A), because Stratford Greens already had at least one tenant who was a Section 8 certificate holder, and once a landlord elects to participate in the program, it may not refuse a prospective tenant on the ground that he is a Section 8 certificate holder.

### B. *The Plaintiffs' Motion to Amend The Complaint*

The plaintiffs seek to amend their complaint in order to add Marie Kravette as a plaintiff. Kravette, like Salute, claims that she was discriminated against by Stratford Greens because she is a Section 8 participant. As noted above, the defendants no longer oppose plaintiffs' motion to amend and supplement their complaint, and that motion is granted.

### C. *Kravette's Motion for a Preliminary Injunction.*

Kravette moves for a preliminary injunction directing Stratford Greens to rent to Kravette a one-bedroom apartment that is currently available in Building No. 5 of the Stratford Greens apartment complex. In order for Kravette to prevail, she must demonstrate (1) that she will suffer irreparable harm if an injunction is not granted, and (2) either (i) a likelihood of success on the merits or (ii) sufficiently serious questions going to the merits combined with a balance of hardships weighing decidedly in her favor. *Bris-*

*tol–Myers Squibb Co. v. McNeil–P.P.C., Inc.,* 973 F.2d 1033, 1038 (2d Cir.1992). Kravette has advanced the same three legal theories that have been raised by Salute.

I find that Kravette has demonstrated that she will suffer irreparable harm in the absence of injunctive relief and that she is likely to succeed on the merits of her United States Housing Act claim. Accordingly, the preliminary injunction will be granted.[2]

### 1. *Irreparable Harm*

On May 26, 1995, the Court held a hearing on Kravette's motion, at which she testified. Based on that hearing and the other submissions of the parties, the Court makes the following findings.

Kravette is a 49–year old divorced woman who suffers from degenerative rheumatoid arthritis, which affects her spine, neck, wrists and knees. She also suffers from clinical depression. These afflictions prevent her from working (she was a hairdresser for many years), and she has received Social Security disability payments since approximately 1988.

In the early 1980s, Kravette submitted an application to participate in the Section 8 program. She finally received a certificate in 1990, and on June 1 of that year began residing as a Section 8 tenant in a two-bedroom apartment in Coram, New York. She resided in that apartment with her son.

On March 9, 1995, Kravette notified the housing authority that had issued her certificate that her son had moved out. She was informed that she no longer qualified for the two-bedroom apartment, and must begin looking for a one-bedroom unit. She was directed to relocate to such an apartment at the conclusion of her current lease, which expires on May 31, 1995.

Kravette began searching for a qualified one-bedroom apartment, and on approximately March 15, 1995, looked at one at Stratford Greens in Hauppauge, New York. She disclosed her participation in the Section 8 program to the rental agent, was told that she would be able to rent the apartment beginning June 1, 1995, and filled out a rental application. Kravette thereupon gave the required 60–day notice to her present landlord that she would not be renewing her lease.

Subsequently, Stratford Greens informed Kravette that it would not approve her application because it did not want to participate in the Section 8 program. As stated in the affidavit of defendant Gerald Monter, the Chief Executive Officer responsible for the management of Stratford Greens, the justification for Stratford Greens' practice of refusing such applications "is quite simple: Section 8 is a voluntary program and I simply choose not to participate. I do not want to get involved with the federal government and its rules and any accompanying regulations pertaining to the relationship I have with my tenants at Stratford Greens." (Monter Aff. ¶ 4.)

Despite having looked at numerous other apartments, Kravette has been unable to find an apartment that will accept Section 8 tenants and is legal, habitable, and within the applicable market rent guidelines. Moreover, it is especially important for Kravette to find such an apartment in or near Hauppauge, where her friend, Margie D'Angelis, resides. For the past three years, D'Angelis, a retired nurse, has taken care of Kravette by cooking, cleaning and shopping for her and by driving her to the doctor and chiropractor. The trip from Hauppauge to Coram, where Kravette currently resides, is 25–30 minutes each way. If the care she provides to Kravette is to continue, D'Angelis, who is 60 years of age, will need to have a shorter drive. She resides less than a mile from Stratford Greens.

Thus, Kravette faces the prospect of eviction from her current apartment on June 1, 1995. On that date, she will need alternative housing. The harm she may suffer is not limited to the prospect of becoming homeless. It includes the prospect of losing the extremely valuable assistance of D'Angelis.

---

**2.** Because injunctive relief is available to Kravette on this claim, I need not address her claims under the Fair Housing Act.

Perhaps most importantly, if Kravette has not secured alternative housing which satisfies the Section 8 guidelines by June 1, 1995, her Section 8 certificate itself, for which one must wait years, is in jeopardy of reverting back to the issuing agency. Kravette thus faces the prospect of returning, perhaps for years, to the life she led before she received her certificate: living in her car or in friends' garages. The Court thus finds that Kravette will suffer actual and imminent harm if injunctive relief is not granted, and that such harm would not be remedied by monetary damages.

### 2. The Likelihood Of Success On The Merits

Kravette's first contention is that the defendants violated 42 U.S.C. § 1437f(t)(1)(A) when they refused to rent her a one-bedroom unit because of Kravette's status as a Section 8 participant. Section 1437f(t)(1)(A) of the Housing Act makes it illegal for an "owner who has entered into a contract for housing assistance payments under this section on behalf of any tenant" to refuse "to lease any available dwelling unit ... to a holder of a certificate of eligibility under this section a proximate cause of which is the status of such prospective tenant as a holder of such certificate." Id. As both parties have acknowledged, this provision prohibits a landlord who has elected to accept Section 8 certificates from "picking and choosing" from among that class of prospective tenants.

It is undisputed that Stratford Greens has on four occasions—the most recent being March 1, 1995—accepted Section 8 participation by its tenants, and currently has two such tenants. However, the defendants point out that the only circumstances in which this has occurred involve existing tenants who have become indigent while already living in Stratford Greens. The defendants contend that accepting these tenants' Section 8 certificates was an act of compassion, not an election to become a full-fledged Section 8 apartment complex. They further contend that a decision applying § 1437f(t)(1)(A) to Stratford Greens would not only be unfair to the defendants, who have made a decision not to participate in a voluntary government program, but would create an incentive for other non-Section 8 landlords to oust existing tenants who fall on financial hard times and seek to supplement their rent with Section 8 assistance.

The defendants candidly admit that they seek a judicially-created exception to a statute that, on its face, unambiguously governs this case. Specifically, they seek a ruling that although § 1437f(t)(1)(A) facially applies to an "owner who has entered into a contract for housing assistance payments under this section on behalf of any tenant ...," an exception should be created when such a contract or contracts are entered into only with existing tenants by a landlord who otherwise declines to participate in the Section 8 program. 42 U.S.C. § 1437f(t)(1)(A) (emphasis added).

The defendants have cited no authority in support of such an exception. In addition, the Court is not convinced, at least at this early stage, that it would be appropriate for a court—rather than the legislature—to afford the defendants the relief they seek. Accordingly, I find that Kravette has demonstrated a likelihood of success on the merits of this claim.

Finally, I should note that in seeking to enforce this statutory provision against the defendants, the plaintiffs contend that § 1437f(t)(1)(A) creates a private cause of action. Although the defendants have not seriously disputed this contention, only one court in this circuit, and only a few in the nation, have addressed it. In Glover v. Crestwood Lake Section One Holding Corp., 746 F.Supp. 301, 308 (S.D.N.Y.), Judge Lowe held that § 1437f(t)(1)(A) creates a private right of action. Moreover, the Seventh Circuit recently became the first court of appeals in the nation to rule on this issue, and it agreed with Glover. Knapp v. Eagle Property Management Corp., 54 F.3d 1272, 1275–1277 (7th Cir.1995). Both decisions are well-reasoned, and although they by no means assure Kravette's success in this lawsuit, they buttress the conclusion that there is a substantial likelihood of success on this claim.

### D. *Conclusion.*

The defendants are hereby ordered to rent to Marie Kravette a one-bedroom unit on the first floor in Building No. 5 at the Stratford Greens apartment complex for a monthly rent of no more than $800 beginning no later than June 1, 1995. The defendants are further directed to execute the necessary leases with Kravette and the local housing authority to ensure that Kravette may avail herself of the benefits of the Section 8 program. If the defendants ultimately prevail on the merits, such leases may be terminated on terms to be established by the Court.

By agreement of the parties, the cross-motions for summary judgment relating to the claims of Salute, which are currently scheduled for July 14, 1995, shall also include the claims advanced by Kravette.

So Ordered.