**Richard SALUTE, Marie Kravette and Long Island Housing Services, Plaintiffs,**

**v.**

**Stratford GREENS, a co-partnership, Gerald Monter, Elliot Monter and Holiday Management Associates, Defendants.**

**No. 93 CV 4874(JG).**

United States District Court, E.D. New York.

March 21, 1996.

Richard F. Bellman, Lewis M. Steel, Miriam F. Clark, Steel, Bellman, Ritz & Clark, P.C., New York City, for Plaintiffs.

Arthur J. Kremer, Kenneth A. Novikoff, Michael Penner, Rivkin, Radler & Kremer, Uniondale, N.Y., for Defendants.

Kenneth H. Zimmerman, U.S. Department of Justice, Housing and Civil Enforcement Section, Civil Division, Washington, D.C., Amicus Curiae.

### MEMORANDUM AND ORDER

GLEESON, District Judge:

Richard Salute, Marie Kravette and Long Island Housing Services have brought this purported class action against Stratford Greens, Gerald Monter, Elliot Monter and Holiday Management Associates. Plaintiffs allege that the defendants' refusal to rent Salute and Kravette apartments in the Stratford Greens apartment complex violated the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*,

and the requirements of the "Section 8" housing program established by United States Housing Act of 1937, as amended by The Housing and Community Development Act of 1974 (codified as amended at 42 U.S.C. § 1437f (1994)). Plaintiffs have moved for partial summary judgment, and defendants have cross-moved for summary judgment. For the reasons set forth below, the plaintiffs' motion is denied and the defendants' motion is granted.

## FACTS

The material facts in this case are undisputed. Richard Salute and Marie Kravette are "handicapped" persons within the meaning of 42 U.S.C. § 3602(h). Salute suffers from multiple medical problems, including chronic asthma, dextroscoliosis of the back, diverticulitis, ulcerative colitis and depression. Kravette suffers from degenerative rheumatoid arthritis and depression. Both receive disability benefits from the Social Security Administration.

Salute and Kravette have both been found eligible for low income housing assistance under the Section 8 program. This program, which is administered by the United States Department of Housing and Urban Development ("HUD"), involves, *inter alia,* the issuance of certificates to eligible persons. If a Section 8 certificate holder finds an apartment that meets the applicable rent guidelines, and the landlord agrees to participate in the Section 8 program, the tenant pays no more than 30% of her gross income in rent. The government subsidizes the remainder pursuant to a contract it executes with the private landlord. Participation by landlords is voluntary; they may lawfully refuse to accept applications from Section 8 tenants.

Certificate holders, who sometimes wait years before receiving the certificate, have a limited amount of time to locate and lease a qualifying apartment. If they fail to do so within the prescribed period, the certificate reverts to the local housing agency through which the program is administered.

Richard Salute received a Section 8 certificate in 1993 after a five-year wait. He found an apartment in Stratford Greens that met his needs, but Stratford Greens refused to rent it to him because he was a Section 8 participant. Salute's certificate subsequently reverted to the government.

Marie Kravette was a Section 8 tenant in a two-bedroom apartment in Coram, New York, from 1990–95. In March 1995, when her son moved out, the program regulations required Kravette to find a one-bedroom apartment. She went to Stratford Greens, found an apartment she liked, and filled out an application to rent it. Stratford Greens denied the application because Kravette was a Section 8 participant. Kravette thereupon sought a preliminary injunction requiring Stratford Greens to rent her the apartment.

Stratford Greens is a 365–unit apartment complex in Suffolk County. It is managed by defendant Holiday Management Associates, of which defendant Gerald Monter is Chief Executive Officer. Monter's practice at Stratford Greens has been to refuse to accept applications from prospective tenants who are receiving Section 8 assistance. The practice is the result of Monter's desire not to "get involved with the federal government and its rules and any accompanying regulations." (Monter Affidavit dated May 15, 1995, ¶ 4.) Accordingly, Stratford Greens has never accepted a tenant who, at the time of application, was a Section 8 participant.

However, on four occasions over the past 15 years, Monter has agreed to accept Section 8 payments on behalf of tenants at Stratford Greens. On all four occasions, the tenant became a Section 8 certificate holder during the tenancy. The first was Bea Guarria, a single mother of two, who in 1983 suffered significant financial hardship and could not pay her rent without Section 8 assistance. The second was a woman who temporarily needed federal assistance. After a period of Section 8 participation, her financial circumstances changed, and she is currently a non-Section 8 tenant. The third exception was made for a woman whose husband died, and the fourth was made in March 1995 for Roseanne Feinstein, another tenant who became indigent. In all of these instances, Monter had the option of refusing Section 8 participation and commencing eviction proceedings if the tenants failed to pay

their rent. Out of compassion, however, the tenants were permitted to stay, and their Section 8 assistance was accepted. Guarria and Feinstein still reside at Stratford Greens and remain Section 8 participants.

On May 31, 1995, I granted Kravette's application and entered a preliminary injunction requiring the defendants to rent a one-bedroom apartment at the Stratford Greens complex to her. *Salute v. Stratford Greens,* 888 F.Supp. 17 (E.D.N.Y.1995). In that decision, I concluded, among other things, that Kravette was likely to prevail on her claim that the "take one, take all" provision of the Section 8 program, 42 U.S.C. § 1437f(t)(1)(A), required Stratford Greens to rent an apartment to Kravette. *Id.* at 20.

For the reasons set forth below, I now conclude that neither Kravette nor Salute can prevail on their claims under that section. In addition, I conclude that the undisputed facts require summary judgment for the defendants on plaintiffs' claims under the Fair Housing Act as well.

## DISCUSSION

A. *The Claim Under the United States Housing Act*

The Section 8 program is voluntary. A private landlord may choose not to accept any tenants who receive Section 8 assistance. However, the statute forbids a landlord from picking and choosing from among holders of Section 8 certificates. Thus, once a landlord chooses to participate by accepting a Section 8 tenant, it cannot turn away subsequent Section 8 certificate holders based on their status as Section 8 participants.

This is accomplished by § 1437f(t)(1)(A), a 1988 amendment to the statute, which provides as follows:

(1) No owner who has entered into a contract for housing assistance payments under this section on behalf of any tenant in a multifamily housing project shall refuse—

(A) to lease any available dwelling unit in any multifamily housing project of such owner ... to a holder of a certificate of eligibility under this section a

proximate cause of which is the status of such prospective tenant as a holder of such certificate, and to enter into a housing assistance payments contract respecting such unit.

■ At the time Salute and Kravette applied for an apartment at Stratford Greens, it had at least one tenant who was receiving Section 8 assistance. Because Stratford Greens denied both Salute's and Kravette's rental applications on the ground that they were Section 8 participants, a straightforward application of the statute would require a finding that Stratford Greens violated it on both occasions. Defendants contend, however, that a "mechanical interpretation and application of § 1437f(t)(1)(A) [would] be fundamentally unfair to defendants" and would prejudice "the very class of citizens that Section 8 was enacted to protect." (Defendant's Memorandum dated May 26, 1995, at 10.) They argue that it would be unfair to them because their acts of compassion in accepting Section 8 payments for a few tenants who became indigent would be punished by requiring wholesale participation in a government program in which they consciously—and lawfully—chose not to participate. They argue that it would be prejudicial to low-income tenants because a ruling in plaintiffs' favor would create a strong incentive for a non-participating landlord to (a) evict tenants who become indigent and eligible for Section 8 assistance in the future, and (b) take steps to rid themselves of existing Section 8 tenants, like Guarria and Feinstein, when their leases expire. Thus, defendants urge me to find an exception to the "take one, take all" mandate of § 1437f(t)(1)(A) in circumstances where an otherwise non-participating landlord has accepted Section 8 assistance only on behalf of existing tenants who became eligible during their tenancy.

In seeking a preliminary injunction, Kravette argued that the statutory language was clear, and permitted no such exception. It urged "a literal, no exception reading of the statute" (Tr.[1] May 26, 1995, at 9), and that only Congress could create the exception defendants sought. In granting the prelimi-

---

**1.** "Tr." refers to the transcript of proceedings on   the specified date.

nary injunction, I observed that I was "not convinced, at least at this early stage, that it would be appropriate for a court—rather than the legislature—to afford the defendants the relief they seek." 888 F.Supp. at 20.

On these cross-motions for summary judgment, plaintiffs have taken a different view. They now agree that this Court has the authority to read an exception into the "take one, take all" requirement in § 1437f(t)(1)(A) in circumstances where "Congress didn't anticipate the problem." (Tr. July 14, 1985 at 22–23.) This change of position was not intended, as it might appear at first blush, to help the defendants. Rather, as set forth in the next section, the defendants have advanced an argument based on the "reasonable accommodations" provision of the Fair Housing Act that, if accepted, would require an exception to the "take one, take all" requirement. Thus, both sides now agree that the section warrants a judicially-crafted exception; they disagree only on what it should be.

Upon further examination, I too have concluded that I may appropriately engraft an exception onto the "take one, take all" provision. I have not reached this conclusion lightly. Nor have I reached it simply because both sides, for different reasons, agree that it is within my authority. Rather, I have found guidance in the opinions of the Supreme Court and the Second Circuit.

■ Courts have the authority to adopt a restricted, rather than the literal or usual, meaning of a statute in order to avoid absurd results, or ones that would thwart the obvious purpose of the statute. *Helvering v. Hammel*, 311 U.S. 504, 510–11, 61 S.Ct. 368, 371–72, 85 L.Ed. 303 (1941). Thus, where the literal reading of a statute would "compel an odd result," a court may properly search for other evidence of congressional intent to lend the statute its proper scope. *Public Citizen v. United States Department of Justice*, 491 U.S. 440, 454, 109 S.Ct. 2558, 2567, 105 L.Ed.2d 377 (1989) (quoting *Green v. Bock Laundry Machine Co.*, 490 U.S. 504,

509, 109 S.Ct. 1981, 1984–85, 104 L.Ed.2d 557 (1989)).

"This advice is particularly pertinent when construing a recent amendment to a complex statute that produces an unexpected result and when there is strong reason to doubt that Congress intended that result." *Lewis v. Grinker*, 965 F.2d 1206, 1215 (2d Cir.1992). *See also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir.1995) (citing cases) ("The plain meaning of a statute is normally controlling, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters. In such cases, it is the intentions of the legislators, rather than the strict language, that controls.")

Here, the literal application of § 1437f(t) sought by plaintiffs would produce an odd and unfortunate result. It would create a powerful incentive for landlords who have chosen not to participate in the Section 8 program to evict tenants who become indigent and eligible for the program during their tenancy. Thus, at the exact moment when such tenants may be most deserving of—and most in need of—compassion from their landlords, the law would discourage it by telling the landlord that it would become a full-fledged Section 8 participant if the tenant were not evicted. In addition, in situations like the one before me, where a non-participating landlord has already made the decision not to evict, a literal application of Section 1437f(t) would create a strong incentive for the landlord to get rid of such tenants when their leases expire, a cumbersome but lawful option for the landlord.

Plaintiffs have candidly admitted that these adverse consequences will flow directly from a decision in their favor. (Tr. July 14, 1995, at 5.) However, they argue that these unfortunate results are required by the policy underlying the "take one, take all" provision. *Id.* at 5–6. This argument has no merit. The purpose of the provision, which, as noted above, was the product of a 1988 amendment, was to prohibit landlords from picking and choosing from the pool of Section 8 applicants who make application to rent apartments.[2] The case before me does not

---

**2.** *See* H.Rep. No. 122(I), 100th Cong., 1st Sess. 1987, *reprinted in* 1987 U.S.C.C.A.N. 3317

implicate this concern. Rather, it involves tenants who, by definition, are already tenants before they became Section 8–eligible, and thus were already "chosen" by the landlord. It is possible that a future case might give rise to a more persuasive "take one, take all" argument. Perhaps, now that Stratford Greens has accepted Section 8 assistance from tenants who became eligible during the course of their leases, the statute may require it to accept Section 8 assistance from other tenants who fit that description. But that issue is not before me. Moreover, there is no indication that Stratford Greens has failed to "take all" of the Section 8 certificates offered by its existing tenants. In any event, the danger Congress sought to address by enacting § 1437f(t)—discrimination among the pool of Section 8 applicants for apartments—is simply not present in this case.

Stratford Greens argues that a decision in plaintiffs' favor would amount to punishment for its acts of compassion. The punishment, they argue, is a forced marriage with the government. The required contracts with HUD, the regulations regarding security deposits, and the cumbersome process of terminating leases are examples of the substantial burdens they say attend landlord participation in the program.

This argument has considerable force. Indeed, there have been numerous legislative efforts, some of which are pending, to repeal the "take one, take all" provision (and to otherwise amend the statute) to minimize the burdens of Section 8 participation in order to make the program more attractive to landlords.[3] Reacting to a recent study conducted for HUD,[4] these bills would repeal the "take one, take all" provision, the so-called "endless lease" provision, and some of the other "most egregious conditions that have caused owner

dissatisfaction" with Section 8 participation. H.Rep. No. 104–461, 104th Cong., 2d Sess. (1996), *available in* Westlaw, 1996 WL 49946. The Secretary of HUD has supported these amendments as necessary to encourage "the participation of good landlords in the program." The United States Housing Act of 1995: Hearings on H.R. 2406 before the Subcomm. on Housing and Community Opportunity of the House Banking and Financial Services Activity, 104th Cong., 2d Sess. (1995) (remarks prepared for Secretary Henry G. Cisneros, Secretary of HUD), *available in* Westlaw, 1995 WL 11095621. I agree that it would be unfair if the defendants' decision not to evict the four tenants who needed Section 8 assistance resulted in the defendants being hauled into full-fledged participation in a voluntary program.

In short, in enacting the 1988 amendment that requires landlords to either participate in full in the Section 8 program or participate not at all, Congress did not anticipate this case. Although its language addresses the facts of this case and produces one result, a faithful adherence to its intentions and to common sense requires another.

> Congress is not gifted with omniscience and does not have the leisure to be able to tie a pretty ribbon around every piece of legislation, and so it often either overlooks or chooses not to attempt to solve problems that lack present salience or urgency. The use by judges of the form of words that Congress has employed to deal with the problem that was before it . . . to solve a problem of which there is no evidence that Congress was ever aware is a formula for the perversion of the legislative purpose. We play "Gotcha!" with Congress. We make traps of its words.

(1987).

**3.** Several bills in the current Congress seek to repeal the "take one, take all" provision. H.R. 2099, which was introduced on July 21, 1995, was passed by both the House and the Senate, but was never signed into law. H.R. 2406 was introduced in the House on September 27, 1995 and reported in the House on February 1, 1996, but has not been voted on. S. 1594 was introduced in the Senate on March 6, 1996, but has

not yet been voted on. The most recent version in the House, H.R. 3019, was introduced on March 5, 1996, was passed on March 7, and was received in the Senate on March 11. The Senate has not yet voted on this bill.

**4.** *See* Meryl Finkel, ABT Associates, *Final Report on Recommendations On Ways To Make The Section 8 Program More Acceptable In The Private Rental Market,* 22–23 (1994).

*Resolution Trust Corp. v. Chapman,* 29 F.3d 1120, 1126 (7th Cir.1994) (Posner, J., dissenting).

■ I am mindful that there are important limits to a district judge's authority to "correct" legislative oversights, and the boundaries of that authority may be hard to identify. However, the correct decision here is clear. Its literal terms notwithstanding, it makes no sense to construe the "take one, take all" provision to embrace the unique situation before me. To do so would punish acts of compassion and, in the end, harm the very class of people Section 8 was enacted to benefit. I hold that the provision is inapplicable when a landlord's only Section 8 participation has been the acceptance of such payments on behalf of existing tenants who became Section 8 tenants during their tenancy.[5]

B. *The Fair Housing Act Claims*

1. *The "Reasonable Accommodations" Claim*

■ The Fair Housing Act Amendments Act of 1988 ensures equal opportunity in housing to handicapped persons. It prohibits discrimination against them "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person." 42 U.S.C. § 3604(f)(2)(A). Discrimination is defined to include "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such persons equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). *See generally Shapiro v. Cadman Towers, Inc.,* 51 F.3d 328, 333–35 (2d Cir.1995). Plaintiffs

contend that the defendants' refusal to make a reasonable accommodation for Salute and Kravette, *i.e.,* the refusal to accept their Section 8 certificates, violated this statute.

■ Stratford Greens can be required to incur reasonable costs to accommodate tenants' handicaps. Examples of reasonable accommodations required by the statute include allowing a blind tenant to have a seeing-eye dog despite a no-pet policy, 24 C.F.R. § 100.204 (1996), and reserving a parking space for a handicapped tenant that she is otherwise not entitled to. *Shapiro v. Cadman Towers, Inc.,* 51 F.3d 328, 335 (2d Cir.1995). The plaintiffs' argument that the accommodation sought here is reasonable rests heavily on the premise that Stratford Greens is already legally obligated by the "take one, take all" provision to rent apartments to Salute and Kravette. Having rejected the premise, I conclude that this argument must fail.[6]

Plaintiffs further contend, however, that even if a landlord is a non-participant in the Section 8 program, the "reasonable accommodations" provision could nevertheless require that it accept handicapped Section 8 applicants. (Plaintiffs' Memorandum dated April 13, 1995 at 25; Reply Memorandum dated June 16, 1995 at 14 n. 3.) At first blush, it seems that, if accepted, this argument would spell doom for landlords who lawfully choose not to accept Section 8 tenants. Specifically, once they received an application from a *handicapped* Section 8 tenant, they would be required (as an accommodation) to accept it, and then the "take one, take all" provision would require them to accept subsequent Section 8 applicants, handicapped or not. In other words, the voluntariness of the Section 8 program

---

5. I reject the defendants' argument that there is no private right of action under the United States Housing Act. The House Report accompanying the enactment of the "take one, take all" provision evidences a clear congressional intent to create "an enforceable right for applicants," and explicitly reiterates a "long-standing intention in favor of private enforcement." H.Rep. No. 122(I), 100th Cong., 1st Sess. (1987), *reprinted in* 1987 U.S.C.C.A.N. 3317, 3348, 3369. Thus, whether or not there exists a private right of action under the other provisions of § 1437f, I agree with the Seventh Circuit's decision in

*Knapp v. Eagle Property Management Corp.,* 54 F.3d 1272, 1275–77 (7th Cir.1995), that there is one under subsection (t). I also reject defendants' claim that Long Island Housing Services does not have standing. *See Havens Realty Corp. v. Coleman,* 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982).

6. I thus need not address defendants' argument that the reasonable accommodations provision is inapplicable when plaintiffs seek an exception to an unlawful policy.

would evaporate once the landlord received an application from a handicapped Section 8 certificate holder.

This is where plaintiffs suggest their own judicial modification of the "take one, take all" provision. Arguing that "Congress clearly didn't understand or contemplate that [the] reasonable accommodation section may cause a landlord to have to take a Section 8 tenant, . . . a court could hold that there isn't a waiver of the voluntary aspect of the Section 8 program when you take [a tenant] under the reasonable accommodations section." (Plaintiffs' Reply Memorandum dated June 16, 1995, at 14 n. 3; Tr. July 14, 1995, at 22.)

Even taking into account that proposed modification of the statute, I find the plaintiffs' argument to be without merit. Although the reasonable accommodations provision can and often will require a landlord to incur some expense, it does not require adjustments or modifications to existing programs that would be substantial, or would fundamentally alter the nature of the program, or pose an undue hardship or substantial burden. *Shapiro,* 51 F.3d at 334. Requiring Stratford Greens to accept handicapped Section 8 applicants would effect just such a fundamental alteration of its rental policies and impose a substantial burden. The current efforts by HUD to amend § 1437f to make Section 8 a more landlord-friendly program in clear relief the substantial nature of the burdens faced by participating landlords.

Plaintiffs and the government, appearing as *amicus curiae,* argue that a factual hearing is necessary to determine the degree of this burden. (Tr. July 14, 1995 at 21, 28–29.) I am mindful that this is a motion for summary judgment, and that my function here is not to decide factual issues, but determine whether they exist. I have regarded all of the plaintiffs' factual allegations as true, and drawn all inferences from those facts in their favor.

In this case, there are no disputed facts. In requesting a trial, plaintiffs do not contend otherwise; rather, they contend that more facts are necessary in order to determine the "reasonableness" of the accommo-

dation they seek. (Tr. July 14, 1995, at 21, 28–29; *see also* Plaintiffs' Reply Memorandum dated June 16, 1995, at 14 n. 3.) I disagree. The defendant Monter's affidavit asserts that accepting a Section 8 tenant effects a "fundamental alteration" in how he manages the property. (Monter Affidavit, ¶ 11.) Some of the examples he provides (*e.g.,* the so-called "endless lease" requirement, the specter of a "take one, take all" requirement) are the very measures that HUD itself has described as too onerous in its pending efforts to reform the Section 8 program. These assertions have not been contradicted by plaintiffs. Because I believe that no rational juror could fail to conclude that requiring Stratford Greens to accept Section 8 tenants would be a fundamental alteration in the nature of its rental policies, summary judgment for defendants is appropriate. *Gallo v. Prudential Residential Services,* 22 F.3d 1219, 1223–24 (2nd Cir.1994); *Shapiro,* 51 F.3d at 334.

### 2. *The Disparate Impact Claim*

Plaintiffs assert that the refusal to rent apartments to Salute and Kravette violated § 3604(f)(1) and (f)(2) under a disparate impact analysis. They contend that the no-Section 8 policy at Stratford Greens has a discriminatory impact on handicapped persons. In support of this claim, they submit an affidavit from a sociologist, whose statistical analysis led him to conclude that "a higher proportion of those households with a disabled person as householder are eligible for Section 8 benefits than those in households where the householder was not disabled." (Affidavit of Richard Bellman dated April 13, 1995, Exhibit 3, p. 2.)

In contending that the disparate impact analysis is available to them in this setting, plaintiffs' argument is based squarely on their assumption that defendants have violated § 1437f(t) and should be deemed participants in the Section 8 program. (Plaintiffs' Reply Memorandum dated June 16, 1995 at 29.) Even if that assumption were correct, the argument would be suspect. *See Knapp v. Eagle Property Management Corp.,* 54 F.3d 1272, 1280–81, (7th Cir.1995); *but see Bronson v. Crestwood Lake,* 724 F.Supp. 148,

153–55 (S.D.N.Y.1989). However, because it is incorrect, I·need go no further.

*CONCLUSION*

For the foregoing reasons, the plaintiffs' motion for partial summary judgment is denied, and the defendants' cross-motion for summary judgment is granted.

So Ordered.