Edward SCHANZ, Plaintiff,

v.

The **VILLAGE APARTMENTS** a/k/a the **Village Apartments in Wixom, Meghan Quigby, and Fred Stephens, Defendants.**

No. CIV. A. 96–40355.

United States District Court,
E.D. Michigan,
Southern Division.

March 16, 1998.

Dennis P. O'Neill, Romulus, MI, for Plaintiff.

Gordon S. Gold, Seyburn, Kahn, Southfield, MI, for Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

On or about October 2, 1996, plaintiff Edward Schanz instituted this action against The Village Apartments, Meghan Quigby and Fred Stephens alleging violations of the Fair Housing Act Amendments of 1988 ("FHAA"), 42 U.S.C. § 3604, and the Michigan Handicapper's Civil Rights Act ("MHCRA"), M.C.L.A. § 37.1502. On or about October 11, 1996, this court dismissed the MHCRA claim without prejudice. Presently before this court is defendants' motion for summary judgment on plaintiff's FHAA claim.[1] For the following reasons, defendants' motion for summary judgment will be granted.

### FACTS

In the latter part of May, 1996, plaintiff Edward Schanz visited The Village Apartments ("The Village") in Wixom, Michigan in order to obtain information about renting an apartment. Plaintiff learned of The Village through an advertisement which appeared in his local newspaper. Upon plaintiff's first visit to The Village, he was greeted by defendant Meghan Quigby, a then-employee of The Village. Plaintiff was provided a map of The Village complex and a floor plan or schematic of the various apartments available at The Village. Plaintiff was also given a tour of a model apartment. At the conclusion of the meeting, Quigby informed plaintiff that if he wished to apply for an apartment, plaintiff would have to complete a Village application, show proof of income and pay the deposit of $465. Plaintiff was also informed that an apartment would be available for occupancy shortly. Quigby invited plaintiff to fill out a visitor information card before he left The Village.

Shortly thereafter, on May 23, 1996, plaintiff returned to The Village and met with Quigby for the second time. Plaintiff brought with him a $465 deposit check from the Jewish Family Services Administration and proof of income in the form of a Social Security memo which set forth plaintiff's Social Security disability income, to wit: $1,167 per month. Plaintiff began filling out the application with Quigby's assistance. During the process, plaintiff informed Quigby of his history of mental illness.

On or about May 27, 1996, plaintiff called Quigby and was informed by her that his application had been rejected as a result of insufficient income and credit.[2] Plaintiff did not have a job at the time he applied for an apartment and was receiving an insufficient amount of social security disability benefits to qualify for a rental. Also, plaintiff's credit report was riddled with red flags, such as: (1) a previous filing for personal bankruptcy to discharge over $40,000 in credit card debt, (2) an accumulation of $5,000 in debt subsequent to the bankruptcy, and (3) a delinquency of over $1,900 in child support payments.

After plaintiff was informed of the rejection of his application, he arranged for the Hope Network to guarantee payment of his rent for the year.[3] A so-called "Guarantor Agreement" was drafted[4] and Marianne

---

1. A hearing was conducted on defendants' motion for summary judgment on Wednesday, February 18, 1998.

2. The application specifically permitted The Village to obtain a credit report on plaintiff.

3. The Hope Network is a non-profit organization under contract to Oakland Community Mental Health Services, plaintiff's mental health provider, to help mentally disabled persons obtain housing.

4. The proposed Guarantor Agreement reads as follows:

> This agreement between *The Village Apartments* (Landlord) and Hope Network, S.E. concerns rental payments under a certain lease agreement between *The Village Apartments* and Edward Schanz dated *May 23, 1996* and expiring on *May 31, 1997.*
> Guarantor hereby guarantees the Landlord that all rental payments of $465.00 a month required under the above lease will be made at the time and in the amount specified in the

Huff, Housing Specialist for Oakland County Mental Health Services ("OCMHS"), asked Fred Stephens, a manager at The Village, to reconsider plaintiff's application in light of the same. Stephens informed Huff that he had never before seen such a contract and therefore had to discuss the matter with George Fujiwara from The Village's management company.

On May 31, 1996, Fujiwara informed Huff that The Village would not accept the Guarantor Agreement since it did not accept such contracts in the normal course of its business. On June 4, 1996, Huff sent a letter requesting that the Guarantor Agreement be accepted as a "reasonable accommodation" under the FHAA (and the MHCRA), to which defendants never responded. However, at some point in time, Stephens informed plaintiff that he could have a "blood relative" co-sign the lease if he wished to rent an apartment at The Village.[5]

Following The Village's rejection of plaintiff's application, the Fair Housing Center of Detroit ("FHC") conducted a "test" to determine if The Village was discriminating against prospective handicapped tenants. Specifically, the FHC sent a woman, Sarah Smith, to The Village who stated that she needed an apartment for her daughter and two-year old granddaughter. Smith indicated to the agent at The Village, Jeff, that her household income was $102,000 and that her daughter had a part-time job and earned $200 a week. Jeff told Smith that she, a blood-relative, could co-sign the lease if her daughter's income met The Village's income requirements. When Smith inquired about other options, she was informed by Jeff that she could pay six months rent in advance, plus an additional $20 a month fee. If such an arrangement caused no problems after six months, then her daughter could pay monthly.

## ANALYSIS

Plaintiff claims that defendants discriminated against him in the rental of an apartment on the basis of his mental handicap thereby violating the FHAA. Defendants argue that there is no genuine issue of material fact that they did not so discriminate. Defendants insist that they are entitled to summary judgment as a matter of law pursuant to Federal Rule of Civil Procedure 56(c) on plaintiff's FHAA claim.

### Summary Judgment

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). There is no genuine issue of material fact when the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *In re Dollar Corp.*, 25 F.3d 1320, 1323 (6th Cir. 1994) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "The mere existence of some alleged factual dispute between the parties will not defeat the otherwise properly supported motion for summary judgment; the requirement is that there be no genuine

---

lease. Guarantor further promises to pay to the Landlord any and all delinquent lease payment amounts upon Landlord's notifying Guarantor of the delinquency date and amount past due.

5. There is some dispute as to whether the Hope Network also offered to guarantee items such as attorneys' fees and court costs. Defendants argue that the Hope Network never offered to guarantee the payment of court costs and attorneys' fees because payment of such items was not specified in the Guarantor Agreement or any other communication, and since it was not mentioned by Huff at her deposition. Plaintiff insists that the Hope Network offered to guarantee attorneys' fees and court costs. Plaintiff has proffered the affidavit of Huff, wherein she avers that she told Fujiwara that such items could be added to the Guarantor Agreement if necessary. Construing the evidence in light most favorable to the plaintiff, this court finds that the Hope Network agreed to guarantee payment of court costs and attorneys' fees.

issue of material fact." *Anderson*, 477 U.S. at 247–48. In deciding a motion for summary judgment, the court must consider all evidence together with all inferences to be drawn therefrom "in light most favorable to the party opposing the motion." *Watkins v. Northwestern Ohio Tractor Pullers Ass'n, Inc.*, 630 F.2d 1155, 1158 (6th Cir.1980).

If the movant meets the standard specified at Rule 56(c), then the opposing party must come forth with "specific facts showing that there is a genuine issue for trial." *First National Bank v. Cities Serv. Co.*, 391 U.S. 253, 270, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); Fed.R.Civ.P. 56(e). The non-moving party "is not entitled to a trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Kraft v. United States*, 991 F.2d 292, 296 (6th Cir.1993), *cert. denied*, 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993); *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). And, "if the adverse party does not respond, summary judgment, if appropriate shall be entered against the adverse party." Fed.R.Civ.P. 56(e); *Rizzo v. Goode*, 423 U.S. 362, 370–71, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *O'Hara v. Wigginton*, 24 F.3d 823, 826–27 (6th Cir.1994).

### *FHAA*

The Fair Housing Act of 1968 ("FHA"), 42 U.S.C. § 3601 *et seq.*, was originally passed as Title VIII of the Civil Rights Act of 1968. It provided protection from discrimination in housing on the basis of race, color, national origin or gender. This statute was passed in the wake of the assassination of Dr. Martin Luther King, Jr. when housing was one of the most segregated aspects of American life. 136 Cong. Rec. E1221 (daily ed. April 25, 1990).

■ In 1988, the Fair Housing Act Amendments ("FHAA") were passed expanding the FHA to include handicapped persons in those classes protected from housing discrimination. H.R.No. 711, 100th Cong., 2d Sess., at 17 (1988), 1988 U.S.C.C.A.N. 2173, 2178. The FHAA makes it unlawful "to dis-

criminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of that buyer or renter." 42 U.S.C. § 3604(f)(1)(A). A plaintiff may prove discrimination under the FHAA by showing: (1) discriminatory effect (a.k.a. "disparate impact"), (2) intentional discrimination (a.k.a. "disparate treatment"), or (3) failure to provide reasonable accommodation. *Larkin v. Michigan Dep't. of Social Services*, 89 F.3d 285, 289 (6th Cir.1996). In this instance, plaintiff is attempting to prove a violation of the FHAA by showing intentional discrimination (a.k.a. "disparate treatment") and failure to provide reasonable accommodation.

### *Plaintiff's Claim of Intentional Discrimination*

■ Defendants contend that they are entitled to summary judgment on plaintiff's claim of intentional discrimination. This court agrees.

■ Plaintiff can demonstrate intentional discrimination one of two ways, either through direct or circumstantial evidence. *Michigan Protection and Advocacy Service v. Babin*, 799 F.Supp. 695, 706 (E.D.Mich. 1992). Here, plaintiff has chosen the latter approach and in order to succeed using this approach, plaintiff must first make a *prima facie* showing of discrimination. Plaintiff establishes a *prima facie* case of discrimination by demonstrating: (1) plaintiff belongs to a protected class of persons;[6] (2) defendants were aware of it; (3) plaintiff was ready and able to accept defendants' offer to rent or buy, and; (4) defendants refused to deal with the plaintiff. *Id.* at 706, 707. After plaintiff establishes a *prima facie* case, defendants must respond with a legitimate non-discriminatory reason for the denial of housing. *Id.* If defendants put forth a legitimate nondiscriminatory reason, plaintiff must then prove the denial of housing was pretextual. *Id.* at 706.[7]

Defendants argue that plaintiff has failed to make a *prima facie* case of intentional

---

**6.** At the hearing on Wednesday, February 18, 1998, defendants' attorney conceded that plaintiff was a "protected person" under the FHAA.

**7.** This burden-shifting analysis resembles the analysis used in Title VII litigation.

discrimination. Defendants insist that plaintiff has not shown he was ready and able to accept defendants' offer to rent an apartment to him since it is undisputed that plaintiff did not meet The Village's financial criteria. The Village requires a tenant's monthly rent to be no more than 71% of the tenant's monthly income. Plaintiff has conceded that his income did not meet this threshold. Also, The Village employs a specific formula to determine whether a prospective tenant is credit-worthy. Utilizing that formula, plaintiff has admitted that he did not qualify for a rental. Moreover, while plaintiff was offered the opportunity to have a blood relative co-sign the lease, it is uncontroverted that plaintiff was not ready and able to exercise this option. In fact, at the hearing on February 18, 1998, plaintiff's attorney conceded that The Village did not rent an apartment to plaintiff because he could not meet The Village's income and rental requirements.

Although plaintiff and his attorney have admitted in no uncertain terms that plaintiff could not meet The Village's income and credit requirements, they nevertheless argue that plaintiff was ready and able to accept defendants' offer to rent an apartment at The Village because plaintiff had secured a third-party to guarantee his rental payments. This argument is wide of the mark. It is uncontroverted that The Village never offered an apartment to plaintiff, or any other person, on such terms. Moreover, for reasons stated *infra*, this court finds that defendants had justifiable business reasons for not doing so. Indeed, plaintiff's argument that The Village should have made an exception to its standard rental policies and accepted the Guarantor Agreement in this instance exposes the true nature of plaintiff's FHAA claim. Plaintiff is really asserting a claim of failure to reasonably accommodate his handicap under the FHAA. He is not asserting an FHAA claim of intentional housing discrimination on the basis of his handicap.

In sum, this court finds that plaintiff has not established a *prima facie* case of intentional discrimination. Plaintiff has not dem-

onstrated that he was ready and able to accept defendant's offer to rent an apartment at The Village to him. It is undisputed that plaintiff was not financially qualified to do so.[8]

■ Assuming arguendo, that plaintiff had made out a *prima facie* case of intentional discrimination, defendants argue that they had legitimate non-discriminatory reasons for denying plaintiff housing. Plaintiff was informed that he was denied housing at The Village due to poor credit and inadequate income. This court finds such reasons to be legitimate and non-discriminatory. In fact, in his response brief, plaintiff concedes that "income and credit requirements are legitimate business needs."

■ Having found that defendants have proffered legitimate non-discriminatory reasons for denying plaintiff housing, the question is thus whether the defendants' reasons are mere "pretexts." Plaintiff argues that they are. He contends that the *real* reason he was denied housing was his mental handicap.

First, plaintiff argues that his insufficient income and poor credit history should have been of no concern to defendants because plaintiff had obtained a Guarantor Agreement assuring payment of his rent by the Hope Network in the event of a default. Plaintiff contends that the obvious reason landlords maintain income and credit requirements is to ensure the receipt of rental payments. Plaintiff contends that the Guarantor Agreement ensured payment of his rent and thus defendants' refusal to accept the Guarantor Agreement is evidence of discrimination or pretext. Plaintiff also argues that the Guarantor Agreement is as effective as ensuring payment of his rent as a blood-relative co-signer, and that defendants' insistence on the latter and rejection of the former is evidence of discrimination or pretext. This court is not persuaded. This court finds defendants' refusal to accept the Guarantor Agreement to be *no* evidence of discrimination in this case. It is uncontroverted that

---

8. Note that the plaintiff is not contending that The Village's rental criteria discriminatorily impacts handicapped persons since they, on average, have less income than non-handicapped persons.

The Village has never before accepted a Guarantor Agreement. Therefore The Village's refusal to accept such an agreement in this instance is not evidence of discrimination or pretext. Also, this court finds several justifiable reasons for requiring a blood-relative co-signer rather than a guarantee by a corporation. First, it is less difficult to conduct a credit check on a blood-relative than to check the financial stability of a corporation (e.g., the Hope Network).[9] Second, a landlord may feel more secure with the knowledge that a blood-relative is assuming liability for the payment of rent, rather than a corporate entity, since a blood-relative might well feel a moral obligation to pay rent, which feeling of moral obligation might not have any impact upon a corporation. Third, there are defenses available to a guarantor that are not available to a co-signor.[10]

Plaintiff also argues that defendants discriminated against him by not offering him the same alternatives offered to a tester sent to the Village by the FHC on July 2, 1996. This argument is baseless. First, plaintiff was offered one of the exact same alternatives offered to the tester, to wit: having a blood-relative co-sign the lease.[11] Also, while plaintiff was not presented with another alternative offered to the tester, i.e. the opportunity to pre-pay six months rent, the failure to inform plaintiff of this option is not evidence of discrimination. The pre-payment plan was only mentioned to the tester after

the tester requested "other options." Neither the plaintiff nor the Hope Network ever requested any other options. Indeed, plaintiff and the Hope Network insisted that The Village accept the Guarantor Agreement.[12]

In short, this court finds that there is no genuine issue of material fact as to whether defendants' proffered reasons for rejecting plaintiff's rental application are pretexts. Based on the uncontroverted evidence, any reasonable juror would conclude that the reasons given by defendants for rejecting plaintiff's application are not pretexts. Therefore, defendants are entitled to summary judgment on plaintiff's claim of intentional housing discrimination.[13]

In holding that The Village's financial criteria are not discriminatory even though plaintiff, a handicapped person, cannot meet them, this court is guided by the cases of *Boyd v. Lefrak Organization*, 509 F.2d 1110 (2d Cir.1975) and *Williams v. 5300 Columbia Pike Corp.*, 103 F.3d 122 (4th Cir.1996). In *Boyd*, the Second Circuit found that the use by defendants of certain financial criteria to determine eligibility for tenancy in their apartments did not violate the FHA. Specifically, the court held that it was not discriminatory to require an applicant (or applicant and spouse) to have a weekly net income of at least 90% of the monthly rental of an apartment or, alternatively, obtain a co-sig-

9. Plaintiff claims that the Hope Network was a credit-worthy institution that has guaranteed rent for a number of individuals at least thirteen apartment complexes. Yet, defendant was not presented with this information.

10. Section 15(d) of the *Restatement of the Law (Third) Suretyship and Guaranty* defines a "co-signer" as "a secondary obligor who is subject to a secondary obligation pursuant to which the secondary obligor is jointly and severally liable with the principal obligor to perform the obligation set forth in that contract." The notes to that Section indicate that the term "co-signer" has essentially the same meaning as "surety" and according to Michigan law, a "surety" may plead any defenses that the principal obligor could plead. *Ackron Contracting Co. v. Oakland County*, 108 Mich.App. 767, 310 N.W.2d 874 (1981).

Section 15(a) of the *Restatement of the Law (Third) Suretyship and Guaranty* defines a "guarantor" as a secondary obligor who is obligated "upon default of the principal obligor ... to

satisfy the obligee's claim with respect to the underlying obligation." Under Michigan law, a guarantor may assert more defenses than those available to a co-signer. In addition to pleading the defenses available to the principal obligor on the principal obligation, a guarantor may also assert any personal defenses that arise out of the guaranty obligation. *In re Allied Supermarkets, Inc.*, 951 F.2d 718 (6th Cir.1991).

11. It should be noted that the so-called "tester" was not in the same situation as the plaintiff. The "tester" indicated insufficient income as a primary problem, while the plaintiff was rejected for both *credit* and income problems.

12. Also, a different agent than the agents involved in this case informed the tester of the six-month pre-payment option.

13. Additionally, the claim against Quigby should be dismissed because plaintiff has conceded that he has no evidence Quigby violated the FHAA.

ner of the lease whose weekly net income is equal to 110% of a month's rent even if public assistance recipients, a large majority of whom are black or Puerto Rican, cannot meet that requirement. In *Williams,* the court found that the FHA did not apply to the "neutral" rental criterion of price even though that neutral criterion may disparately impact blacks and the handicapped because they may, on average, be poorer than whites or non-disabled persons.

### Reasonable Accommodation

■ Plaintiff contends that The Village should have made an exception to its standard rental policies and procedures and accepted the Guarantor Agreement as a "reasonable accommodation" under 42 U.S.C. § 3604(f)(3)(B). This court finds that defendants are entitled to summary judgment on this claim.

■ Title 42, Section 3604(f)(3)(B) makes it unlawful to

[refuse] to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.

"Under this provision, 'affirmative steps are required to change rules or practice if [such steps] are necessary to allow a person with a disability an opportunity to live in the community.'" *Samuelson v. Mid–Atlantic Realty Co.,* 947 F.Supp. 756 759 (D.De.1996) (citing *Horizon House Developmental Servs., Inc. v. Township of Upper Southampton,* 804 F.Supp. 683, 699 (E.D.Pa.1992), *aff'd mem.,* 995 F.2d 217 (3d Cir.1993)). To establish a claim under 42 U.S.C. § 3604(f)(3), plaintiff must show: (1) he suffers from a handicap, (2) defendants knew of the handicap, (3) accommodation of the handicap is necessary to afford plaintiff an equal opportunity to use and enjoy the housing in question, and (4) defendants refused to make such an accommodation. *United States v. California Mobile Home Park Mgmt. Co.,* 107 F.3d 1374, 1380 (9th Cir.1997).

Defendants contend that based on the uncontroverted facts, plaintiff has not made out

a claim under 42 U.S.C. § 3604(f)(3)(B). Specifically, defendants argue that plaintiff has not demonstrated the third element of a § 3604(f)(3)(B) claim because he has not shown that defendants' acceptance of the Guarantor Agreement was "necessary" to afford plaintiff an equal opportunity to use and enjoy a Village apartment. Defendants insist that the requested accommodation is unrelated to plaintiff's handicap, and "[t]he concept of necessity requires at a minimum the showing that the desired accommodation will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability." *Bronk v. Ineichen,* 54 F.3d 425, 429 (7th Cir.1995) (landlord not required to waive pet policy as a reasonable accommodation since pet had no relation to tenant's handicap of deafness; if dog had been a "hearing dog" than a reasonable accommodation would be necessary and appropriate).

Plaintiff argues that the proposed accommodation (i.e., the Guarantor Agreement) *is* necessary to afford him an equal opportunity to live in The Village and that said accommodation will lessen the impact of his handicap. Plaintiff argues that an effect of his mental handicap is that he cannot meet The Village's income and credit requirements. Specifically, he argues that due to his handicap he cannot work and is not able to earn a sufficient income to meet his expenditures, and thus cannot meet The Village's income and credit requirements.[14]

Plaintiff cites two cases in support of his position that a reasonable accommodation may take the form of an economic accommodation, such as the requested accommodation here. The first case cited by plaintiff is *United States v. California Mobile Home Park Mgt. Co. et al.,* 29 F.3d 1413 (9th Cir.1994). In *California Mobile,* the court held that plaintiff-tenant had stated a claim for relief under the FHAA when she alleged that defendants had failed to reasonably accommodate her by waiving the monthly parking fee for her medical aide. Plaintiff insisted that such a waiver was necessary to afford her an "equal opportunity to use and enjoy [her] dwelling." *Id.* at 1418. In the second

---

**14.** Plaintiff has since obtained a job.

case cited by plaintiff, *Samuelson v. Mid–Atlantic Realty Co., Inc.*, 947 F.Supp. 756 (D.De.1996), the court found that plaintiff had stated a cognizable claim of handicap discrimination under the FHAA when he alleged that the defendant failed to reasonably accommodate him by waiving an assessment of rent for the remainder of his lease as well as various sundry charges (e.g., cleaning charges). In *Samuelson,* plaintiff was forced to break his lease early due to a serious deterioration in his mental condition which made it unsafe for him to continue living in the apartment for the remainder of his lease.

This court finds *California Mobile* and *Samuelson* distinguishable. In *California Mobile* and *Samuelson,* the plaintiffs were not seeking an accommodation in order to *obtain* an apartment. The handicapped plaintiffs in those cases had already obtained apartments and, in fact, were already living in them at the time the accommodations were requested. Also, in *California Mobile* and *Samuelson* there was a direct nexus between the requested accommodations and the plaintiffs' handicaps. In other words, the requested accommodations would not have been needed if the plaintiffs were not handicapped. In the instant case, this direct correlation between plaintiff's handicap and the requested accommodation is missing. Put simply, in the case at bar, plaintiff has no need for the Village to accept the Guarantor

Agreement to accommodate his handicap because his handicap is not preventing him from obtaining an apartment at The Village. Instead, it is plaintiff's financial situation which impedes him from renting an apartment at The Village, and it is plaintiff's financial situation which he is requesting that defendants accommodate. The FHAA does not require that this be done. Also, while plaintiff argues that his financial situation is directly attributable to his handicap, such a contention is nothing more than an attempt by him to transform his "financial status" into a "handicap" in order to secure relief under the FHAA. This court cannot accept this argument because it clearly stretches the FHAA beyond its intended bounds.[15]

Plaintiff also cites many cases in which plaintiffs sought changes in zoning laws as "reasonable accommodations." These cases are distinguishable because they do not involve accommodations of an "economic" nature.

In sum, this court concludes that defendants are entitled to summary judgment as a matter of law on plaintiff's claim of failure to make a reasonable accommodation.[16]

## ORDER

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment is GRANTED.

**SO ORDERED.**

---

**15.** In *Samuelson,* the court made it clear that the FHAA does not entitle a handicapped person to a preference, but merely an equal opportunity. The court in *Samuelson* provided an example of an impermissible preference:

> [T]he landlord of an apartment complex may charge all residents a monthly fee for parking their car. Although a handicapped resident may require a car far more than other residents, a waiver of the car fee would put him in a privileged position in relation to other residents [and thus constitutes a preference, rather than a reasonable accommodation].

In the case *sub judice,* plaintiff is undeniably requesting a preference, rather than a reasonable accommodation. Plaintiff, who is handicapped, needs to obtain a waiver of The Village's standard income and credit requirements in order to qualify for a rental. Yet, a waiver of such requirements would put plaintiff in a privileged position in relation to other residents. As such, the FHAA does not require The Village to accommodate plaintiff by accepting the Guarantor Agreement.

**16.** Although not cited by either party, this court finds the case of *Salute v. Greens,* 918 F.Supp. 660 (E.D.N.Y.1996) instructive. In that case, plaintiffs argued that the defendant apartment complex failed to make a "reasonable accommodation" by accepting Section 8 certificates issued by the United States Department of Housing and Urban Development. The court held that no rational juror could conclude otherwise than requiring the apartment complex to accept such certificates would "fundamentally alter" the nature of its rental policies and impose a substantial burden on the defendants. *Id.* at 667. Thus, the court determined that acceptance of the Section 8 certificates was not a "reasonable accommodation" as a matter of law and granted summary judgment to defendants on their FHAA claim. *Id.* Applying *Salute* to the case at bar, this court finds that it would "fundamentally alter" The Village's rental criteria to require acceptance of third-party guarantees. As such, the guarantees are not *reasonable* accommodations under the FHAA.

## *JUDGMENT*

This action came before the court, Honorable Paul V. Gadola, District Judge, presiding, and the issues having been duly reviewed and a decision having been duly rendered.

**IT IS ORDERED AND ADJUDGED** that judgment be entered for the defendants, that plaintiff take nothing and that the action be dismissed.

It is further **ORDERED** that the clerk serve a copy of the judgment by United States mail on the counsel for plaintiff and on counsel for defendants.